UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

MISTER SOFTEE, INC., et al.,

               Plaintiffs,

      -v-                                    No.  14 Civ. 1975 (LTS)(RLE)

DIMITRIOS TSIRKOS,

               Defendant.

-------------------------------------------------------x

<u>MEMORANDUM OPINION</u>

        In this trademark infringement and breach of contract action, Plaintiffs, Mister

Softee, Inc. ("MSI"), Mister Softee of Queens Inc. ("MSQ"), and Spabo Ice Cream Corp.

("Spabo," and collectively "Plaintiffs") seek injunctive and monetary relief against Defendant

Dimitrios Tsirkos ("Tsirkos" or "Defendant").  Tsirkos, the owner of several ice cream trucks, was

until recently a Mister Softee franchisee and licensee.

        The case is before the Court on Plaintiffs' application pursuant to Federal Rule of

Civil Procedure 65 for preliminary injunctive relief barring Defendant from using MSI's registered

trademarks or confusingly similar marks, and from competing with any other MSI franchisees.

The Court entered an order to show cause on April 24, 2014, and after an adjournment at the

parties' request, held an evidentiary hearing on May 28, 2014.[1]  Post-hearing submissions were

completed on June 2, 2013.

        In accordance with Federal Rule of Civil Procedure 52(a), this Memorandum

---

[1]        Prior to the hearing, the Court entered an order instructing that "[t]he affidavits
entered in [support of and in opposition to Plaintiffs' application] will be deemed as
direct testimony of the affiants.  Any further testimony of the affiants will be limited
to cross-examination, redirect, and re-cross." (Docket entry no. 41.)

Opinion constitutes the Court's findings of fact and conclusions of law.  To the extent any finding

of fact includes conclusions of law it is deemed a conclusion of law, and vice versa.  The Court has

thoroughly considered the parties submissions and testimony, and, for the following reasons,

Plaintiffs' motion for a preliminary injunction is granted.

FINDINGS OF FACT

Plaintiffs operate a franchising business which licenses independent operators of

"Mister Softee" branded ice cream businesses ("Mister Softee").

MSI is the owner of certain registered trademarks related to Mister Softee, and

licenses these marks to sub-franchisors, including MSQ and Spabo, who in turn license them to

franchisees, under written franchise agreements, for use in operating Mister Softee ice cream

trucks.  (4/17/14 Conway Aff. ¶¶ 3, 9.)  Specifically, MSI owns the trademark "Mister Softee" and

related logos which are registered on the Principal Register of the United States Patent and

Trademark Office at Registration Numbers 2128918, 0667335, and 0663456.  (Id. ¶ 3.)  MSI also

owns a sensory mark which consists of the Mister Softee jingle, which is registered at Registration

Number 2218017.  (Id. ¶ 3.)  Finally, MSI owns a federal trademark registration for the design of

the Mister Softee ice cream truck, registered on the Principal Register of the United States Patent

and Trademark Office at Number 2906357.  (Id. ¶ 3.)

Mister Softee-branded trucks have a distinctive appearance, an example of which is

depicted in Exhibit A to the Conway Affidavit.  The Court takes judicial notice that Mister Softee's

truck design registration, as available on the website of the Patent and Trademark Office, includes

the colors blue and white as features of the mark, consisting of a "blue horizontal stripe at the

bottom of the white truck with blue wheels and including the word mark Mister Softee, and the

design of an ice cream cone head.  The mark also includes a sundae container with the Mister

Softee word mark and a milkshake container with the Mister Softee ice cream cone head included

therein."  The registration includes the words "SUNDAES SHAKES CONES DELICIOUS

SHAKES" as incorporated in the truck design.  The illustration shows those words written in

capital letters above the blue horizontal stripe at the bottom of the truck.  (PTO Reg. No. 2906357;

see Exhibit A to 4/17/14 Conway Aff. at docket entry 12-4, pages 10-13.)  Mister Softee trucks are

two-axle box trucks with openings for vending of food on the either side.  (Id. at Ex. A.)  The

trucks display an anthropomorphized ice cream cone head with red bow tie and blue jacket on the

side of the truck.  (Id.)  The "Cone head" figure is registered as a Mister Softee trademark.  (E.g.,

PTO Reg. No. 0667335.)  The trucks display the slogan "the Very Best" in red script on the hood.

(4/17/14 Conway Aff. Ex. A.)  The trucks display the words "Delicious Shakes" in red script below

a depiction of a milk shake on the door of the truck.  (Id.)  In addition to their uniform appearance,

the Mister Softee trucks play a distinctive jingle that is protected by a sensory mark.  (Id. ¶ 3.)

       Defendant is a former franchisee of Spabo and MSQ and has operated Mister Softee

trucks for almost 30 years.  (Tsirkos Dep. 5:21-6:2.)  Defendant signed six Franchise Agreements

with Spabo and one with MSQ (the "Franchise Agreements").  The Franchise Agreements are

substantially similar to each other, and allowed Defendant to operate sixteen Mister Softee

franchises in certain specified territories within Bronx, New York, and Queens Counties in New

York state.  (May 28 Tr. 14:17-24; Deft.'s PI Ex. A.)[2]  The Franchise Agreements require

Defendant to pay certain royalties and to comply with certain policies and procedures, including

parking his Mister Softee trucks in a designated depot for cleaning and storage.  They provide that

they could be terminated on notice, by Spabo and MSQ, if Defendant abandoned his franchises,

and they include the following covenant not to compete:

> [f]or a two (2) year period following the expiration or termination of [his] interest in
> [the relevant Franchise Agreement], neither [Defendant] nor [Defendant's]

---

[2]     The full text of the Franchise Agreements is attached to the Complaint as Exhibit B.

> immediate family members, nor [Defendant's] partners, shareholders or members,
> nor their immediate family members, as applicable, [would] directly or indirectly,
> for themselves or through, on behalf of, or in conjunction with any other person,
> partnership, corporation, limited liability company; or other entity, own, maintain,
> engage in, be employed by, lend money to, extend credit to, or have any interest in
> any other business which operates or licenses businesses featuring primarily the
> sale of ice cream or other frozen confections within the former territory or within
> any system franchisee's territory.

(Defendant's PI Ex. A ¶ 16.2; Compl. Ex. B.)

Defendant was not given a prospectus at the time he signed the Franchise Agreements. (Tsirkos Aff. ¶ 10; Bouziotis Aff. ¶¶ 1-2.) Peter Bouziotis, Secretary and Treasurer of Spabo, offered Defendant a prospectus, but Defendant refused to review it "because [Defendant] claimed he was a franchisee for almost 30 years, and knew everything he needed to know about the Mister Softee system." (Bouziotis Aff. ¶ 2.)

At some point, Defendant ceased making royalty payments and parking his trucks at the designated depot. (Tsirkos Dep. 58:6-19.) Defendant decided to terminate the Franchise Agreements. (Tsirkos Aff. ¶ 3.) Defendant asserts that he believed that Plaintiffs were in breach of the Franchise Agreements because, inter alia, they failed to ensure the quality of the ice cream sold by franchisees, and they failed to prevent franchisees from competing with each other by operating non-Mister Softee branded trucks. (Tsirkos Aff.)[3] On February 18, 2014, Mister Softee sent a notice of termination to Defendant. (Compl. at ¶ 32, Ex. C; Pl. Answer ¶ 11.) Defendant received the Notice of Termination on February 19, 2014. (Compl. at ¶ 33, Ex. D.; Pl. Answer ¶ 11.) The notice and receipt thereof terminated the Franchise Agreements.

After termination of the Franchise Agreements, Defendant continued to operate in areas for which Mister Softee and its affiliates had granted franchises. Defendant initially labeled

---

[3]     The Court need not assess the credibility of Defendant's assertion as to his rationale, as Defendant does not argue on this motion practice that the alleged breaches rendered the non-competition provisions of the Franchise Agreement unenforceable.

his trucks as "Master Softee" trucks and later labeled at least one truck "Soft King" instead of

"Master Softee."  Defendant no longer uses the Mister Softee jingle.  His "Master Softee" trucks

are, however, the same two-axle models and remain strikingly similar in appearance to the Mister

Softee branded trucks in several respects, including: (1) a white truck with a blue trim on the

bottom, (2) the slogan "the World's Best" in red script on the front roof panel, (3) an

anthropomorphized waffle cone character with a blue jacket and red bow tie.  An example of

Defendant's "Master Softee" truck labeling is depicted in Exhibit B to the Conway Affidavit;

Defendant's PI Exhibits C and D show the later "Soft King" trade dress.[4]

The "Soft King" truck design is also strikingly similar to the Mister Softee trucks in

material respects, including: (1) a white truck with a blue trim on the bottom with the words

"SHAKES," "SUNDAES," "CONES" written above it, (2) the slogan "the World's Best" in red

script on the front roof panel of the truck, (3) an anthropomorphized waffle cone character with a

blue jacket and red necktie on the side of the truck, and (4) the words "Delicious Shakes" written in

red script below a depiction of a milk shake on the door of the truck.  Defendant's "Master Softee"

and "Soft King" truck decoration are confusingly similar to Plaintiff's Mister Softee logos and

trade dress.  The coloring of the trucks and the placement of logos and figures thereon are virtually

identical.  The differences in words and in the details of the cone head figures are not likely to be

perceived from a distance, when the trucks initially attract the attention of passers-by, and are not

likely to differentiate Defendant's trucks from those of Plaintiffs' franchisees in the minds of

young children and other customers.

Mister Softee has granted franchises for all areas of New York City other than

Staten Island, as well as for all of Nassau and Suffolk Counties.  Defendant intends to continue to

---

[4]        Copies of these exhibits are appended to this Memorandum Opinion.

operate his ice cream truck businesses in the same territories in which he operated under the

Franchise Agreements, and also seeks to operate his businesses in other Mister Softee franchisee

territories.

Defendants' use of similar truck decoration and his operation of those trucks in

Mister Softee-franchised territories is likely causing harm, and will likely continue to cause harm

to Plaintiffs and their franchisees.  Because of the confusingly similar decoration, customers are

likely to associate Defendant's trucks with Plaintiffs' trademarks and products.  Plaintiffs have no

control over the quality of Defendant's products and services, however, so any decrement in

quality or failure to maintain sanitary standards would reflect badly on Plaintiffs and their

franchisees and devalue Plaintiffs' marks.  Furthermore, the use of confusingly similar decoration

to attract customers undermines the goodwill and competitive value associated with Mister Softee

and its trademarks.  Such harms cannot be quantified or addressed adequately with money

damages.  Plaintiffs have received complaints that customers were confused by Defendant's Master

Softee trucks, believing that they were part of the Mister Softee franchise system.  (Conway Aff. ¶

7.)

Mr. Bouziotis acknowledges, however, that a former franchisee operating in a

Mister Softee franchise territory with a truck that is "totally different" from the Mister Softee-

branded trucks would be not be as damaging to the Mister Softee franchise as a former franchisee

operating a truck with a design confusingly similar to that of Mister Softee-branded trucks.  (May

28 Tr. 28:23 - 29:5.)  Mr. Bouziotis further testified credibly that, if he attempted to sell franchises

in Defendant's former territories, it would be more difficult if Defendant were still selling ice

cream in those territories.  (May 28 Tr. 29:5-9.)  Mr. Bouziotis described the harmful competition

as follows "if it is somebody that [sic] was a person that [sic] gained all that knowledge through the

hard work of Mister Softee and now he is going to use it to hurt [current franchisees] . . . I am

talking about knowledge of how to run a successful business gained by the knowledge of Mister Softee, Inc. and then coming back.  That kind of competition."  (May 28 Tr. 31:6-13.)  Mr. Bouziotis further testified that Plaintiffs do not allow franchisees to compete with one another in any territory.  (Bouziotis Aff. ¶¶ 4-5.)

Defendant proffered in an affidavit that Plaintiffs do allow their franchisees to compete with one-another, and that "they themselves are in competing ice cream businesses."  For example, Defendant stated that Mr. Bouziotis owns and operates Babo Teahouse, an ice cream shop in Jersey City, NJ.[5]  According to Defendant, Jimmy Spaliaras, who co-owns Spabo, also owns Helmos Ice Cream Corp. and Helmos Ice Cream Sales Inc., which both sell ice cream truck related supplies including ice cream to all Mister Softee competitors in New York City.  (Tsirkos Aff. ¶¶ 16 - 17.)  Defendant also stated that Spabo has sold franchises to known Mister Softee competitors.  (Tsirkos Aff. ¶ 19.)  Mr. Bouziotis denied this last allegation, asserting that Mister Softee does not allow its franchisees to operate non-Mister Softee ice cream trucks and disclaiming knowledge of any violations of this policy.  The Court finds Mr. Bouziotis' testimony credible.

<u>CONCLUSIONS OF LAW</u>

A court determining whether to grant a preliminary injunction must consider three factors: "(1) irreparable harm absent injunctive relief; (2) either a likelihood of success on the merits, or a serious question going to the merits to make them a fair ground for trial, with a balance of hardships tipping decidedly in the plaintiff's favor; and (3) that the public's interest weighs in favor of granting an injunction."  <u>Red Earth LLC v. United States</u>, 657 F.3d 138, 143 (2d Cir. 2011).  The party seeking the injunction must demonstrate "by a clear showing" that the necessary elements are satisfied.  <u>Mazurek v. Armstrong</u>, 520 U.S. 968, 972 (1997).  "A showing of

---

[5]  The record contains no evidence regarding Mister Softee-branded retail activity in New Jersey.

irreparable harm is the single most important prerequisite for the issuance of a preliminary

injunction." <u>Faiveley Transp. Malmo AB v. Wabtec Corp.</u>, 559 F.3d 110, 118 (2d Cir. 2009)

(internal quotation marks omitted). "To satisfy the irreparable harm requirement, Plaintiffs must

demonstrate that absent a preliminary injunction they will suffer an injury that is neither remote nor

speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end

of trial to resolve the harm." <u>Grand River Enter. Six Nations, Ltd. v. Pryor</u>, 481 F.3d 60, 66 (2d

Cir. 2007) (internal quotation marks omitted).

<u>Likelihood of Success on the Merits of Trademark Infringement Claim</u>

Plaintiffs assert claims of trademark infringement based on Defendant's use of

marks that they argue are likely to confuse customers into believing that he is selling the goods and

services of a Mister Softee franchise.  Plaintiffs seek a preliminary injunction barring Defendant

from using the Mister Softee trademarks or marks confusingly similar to them.

"The plaintiff in a trademark infringement action establishes a likelihood of success

by showing both (1) a legal, exclusive right to the mark, and (2) a likelihood that customers will be

confused as to the source of the infringing product." <u>Otokoyama Co. Ltd. v. Wine of Japan Imp.</u>,

Inc., 175 F.3d 266, 270 (2d Cir. 1999) (citing <u>Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.</u>,

799 F.2d 867, 871 (2d Cir. 1986)).  To determine whether there is a likelihood of confusion, courts

looks to the eight-factor balancing test announced in <u>Polaroid</u>.  <u>Polaroid Corp. v. Polarad Elecs.</u>

<u>Corp.</u>, 287 F.2d 492 (2d Cir. 1961).  "The eight factors are: (1) strength of the trademark; (2)

similarity of the marks; (3) proximity of the products and their competitiveness with one another;

(4) evidence that the senior user may 'bridge the gap' by developing a product for sale in the

market of the alleged infringer's product; (5) evidence of actual consumer confusion; (6) evidence

that the imitative mark was adopted in bad faith; (7) respective quality of the products; and (8)

sophistication of consumers in the relevant market." <u>Starbucks Corp. v. Wolfe's Borough Coffee</u>,

588 F.3d 97, 115 (2d Cir. 2009).  The court's application of the <u>Polaroid</u> test is "not mechanical, but rather, focuses on the ultimate question of whether, looking at the products in their totality, consumers are likely to be confused."  <u>Id.</u>

MSI has registered the Mister Softee and cone head logos, and the trade dress for Mister Softee trucks.  "[T]he fact that the USPTO accepted [a] mark for registration creates a presumption that the mark is valid."  <u>American Ort, Inc. v. Israel</u>, No. 07 Civ. 2332(KMK), 2007 WL 2049733, at *4 (S.D.N.Y. July, 17, 2007).  Defendant has offered no evidence to rebut the presumption, therefore the Court finds that MSI has the legal, exclusive right to the Mister Softee mark, the cone head figure that Mister Softee has registered with the Patent and Trademark Office, and the registered trade dress for the trucks.  <u>See</u> <u>Tiffany & Co. v. Costco Wholesale Corp.</u>, 13 Civ. 1041 LTS DCF, 2014 WL 199603 (S.D.N.Y. Jan. 17, 2014) ("Once a plaintiff shows that a trademark has a valid registration, the 'burden of production therefore shifts to Defendant to proffer evidence that the mark is not valid, <u>i.e.</u>, that it is generic.'") (quoting <u>Lemme v. Nat'l Broad. Co., Inc.</u>, 472 F. Supp. 2d 433, 443 (E.D.N.Y. 2007).

The relevant <u>Polaroid</u> factors all favor Plaintiffs.  The combination of logos and trade dress elements is distinctive and arbitrary, rather than generic.  <u>See</u> <u>Star Indus., Inc. v. Bacardi & Co. Ltd.</u>, 412 F.3d 373, 384-85 (2d Cir. 2005) ("Marks are classified, in ascending order of strength, as '(1) generic; (2) descriptive; (3) suggestive; [or] (4) arbitrary or fanciful.'") (quoting <u>TCPIP Holding Co. v. Haar Communications, Inc.</u>, 244 F.3d 88, 93 (2d Cir. 2001)).  Defendant's "Master Softee" and "Soft King" truck motifs are strikingly similar to Plaintiffs' Mister Softee trade dress and logos.  Both companies engage in retail sales of soft ice cream from trucks, thus establishing product proximity and competitiveness, and eliminating any question of "bridging the gap."  Plaintiff has proffered evidence of actual consumer confusion.  It is obvious that Defendant adopted his truck designs with the object of achieving an appearance similar to Plaintiffs' Mister

Softee trucks, indicating the existence of bad faith.  The trucks are designed to appeal to children, who are relatively unsophisticated consumers.  There is no evidence concerning the respective quality of the products.  Seven of the eight <u>Polaroid</u> factors thus favor Plaintiffs.

As explained above, the evidence demonstrates clearly that both the Master Softee and Soft King trucks are confusingly similar to the Mister Softee trucks.  All three trucks are painted white with blue trim on the bottom.  The trucks display red script writing in identical, or nearly identical, locations on the truck.  The trucks also display a substantially identical anthropomorphized ice cream cone figures, with blue jacket and red tie, located in the same position on the side of the truck.  The slogans, "the Very Best" and "the World's Best" are located in similar positions on the truck, in red script, and Defendant's variant appears to be designed to attract customers by confusing them into thinking, at least initially, that Defendant's trucks are Mister Softee vendors.  Furthermore, Plaintiffs provided evidence that customers were in fact confused by Defendant's Master Softee trucks.  The Court finds that Defendant's "Master Softee" and "Soft King" truck designs are likely to cause customers confusion as to the affiliation with Mister Softee.

Therefore, the Court finds that Plaintiffs have demonstrated that they are likely to succeed on the merits of their trademark infringement claims against Defendant.

Likelihood of Success on the Merits of Plaintiffs'
<u>Claim for Breach of Covenant Not to Compete</u>

Plaintiffs seek to enjoin Defendant from competing in his former territories and those of any other Mister Softee franchisee for two years, pursuant to the non-competition covenants in the Franchise Agreements.  The non-competition covenants provide that

> [f]or a two (2) year period following the expiration or termination of [his] interest in [the relevant Franchise Agreement], neither [Defendant] nor [Defendant's] immediate family members, nor [Defendant's] partners, shareholders or members, nor their immediate family members, as applicable, [would] directly or indirectly,

> for themselves or through, on behalf of, or in conjunction with any other person, partnership, corporation, limited liability company; or other entity, own, maintain, engage in, be employed by, lend money to, extend credit to, or have any interest in any other business which operates or licenses businesses featuring primarily the sale of ice cream or other frozen confections within the former territory or within any system franchisee's territory.

(Franchise Agreements ¶ 16.2; see Defendant's PI Ex. A; Compl. Ex. B.)  As noted above, Defendant has proffered that he is operating his ice cream trucks, and seeks to continue to operate his ice cream trucks, in his former territories and in the territories of other Mister Softee franchisees.

Defendant argues that injunctive relief should be denied because he is entitled to rescission of the Franchise Agreements due to Plaintiffs' alleged failure to comply with a prospectus requirement imposed by the franchise provisions of the New York General Business Law.  Defendant also contests the enforceability of the non-competition covenants, asserting that they are unreasonable in duration and scope.

New York's Franchise Sales Act governs the sale of franchises.  Under the act, a franchise may not be sold without first "providing" the franchisee with a prospectus that discloses certain information about the financial prospects of the franchise.  N.Y. Gen. Bus. Law § 683 (McKinney 2012).  A person who sells a franchise in violation of the statute is liable for damages and, "if such violation is willful and material, for rescission."  N.Y. Gen. Bus. Law § 691 (McKinney 2012).  The legislature's stated intention in enacting the Franchise Sales Act provisions of the General Business Law was to "to prohibit the sale of franchises where such sale would lead to fraud or a likelihood that the franchisor's promises would not be fulfilled."  N.Y. Gen. Bus. Law § 680 (McKinney 2012).  Courts have held that, to demonstrate wilfulness within the meaning of Section 691, "the plaintiff need only show that the defendants intentionally violated the Act." Reed v. Oakley, 172 Misc. 2d 655, 658 (Sup. Ct. 1996), aff'd, 240 A.D.2d 991 (1997); Vysovsky

v. Glassman, 01 Civ. 2531, 2007 WL 3130562, at *12 (S.D.N.Y. Oct. 23, 2007) ("For purposes of

the Franchise Sales Act, 'willful' means no more than voluntary or intentional, as opposed to

inadvertent.").

Defendant argues that, since he never possessed a prospectus, Plaintiffs violated the

Franchise Sales Act in that they failed to "provide" a prospectus as required.  Defendant testified

that he does not remember ever having been given a prospectus for the Mister Softee franchise.

However, Mr. Bouziotis' testimony that he attempted to give Defendant a prospectus, and that

Defendant refused to accept the prospectus, arguing that he knew everything about the system, is

unchallenged.

The Franchise Sales Act does not define "provide," and there is no precedent

defining what it means to "provide" a prospectus.  In common English usage, "provide" means "to

supply or make available."  Merriam-Webster's Collegiate Dictionary 940 (10th Ed. 1999).

Plaintiffs have demonstrated that they made the prospectus available to Defendant, when they

offered it to him, and he rejected the document.  Defendant's argument runs contrary to the plain

language of the statute and he offers no authority that supports his reading of the statute.[6]

Furthermore, even if the failure to follow through and physically deliver a

---

[6]     Defendant relies primarily on Pagham Chicken, Inc. v. Loghar, 1986 N.Y. Misc.
LEXIS 3164 (N.Y. Sup. Ct. Mar. 26, 1986), which holds that a franchisor must strictly
comply with the financial disclosure portions of the Franchise Sales Act.  However,
Pagham  is inapposite.  In Pagham the franchisor failed to register with the state as
required by the act, failed to create a valid prospectus, and failed to offer prospectus
documents to the franchisee.  Id., at * 17-18 ("The franchisor's failure to provide the
franchisee with a registered offering prospectus is undisputed. The franchisor did not
make initial efforts to have an offering prospectus approved and registered by the
Department of Law, but this was done six months after the instant franchise
relationship was in effect, and several months after the franchisor had sold an
unrelated franchise . . . .").  The Pagham franchisee also asserted causes of action for
fraud.  Id. at *13.  There are no similar allegations here, nor any evidence that
Plaintiffs failed to comply with the registration and prospectus-preparation
requirements of the statute.

prospectus, notwithstanding Defendant's demurral, constituted a violation of the mandate to "provide" a prospectus, nothing in the current record indicates that such violation was willful.  To the contrary, Plaintiffs' evidence indicates that they intended to comply with the prospectus delivery requirement.

The Court finds that Plaintiffs have met their burden of demonstrating that they are likely to succeed on the merits of their claim that Defendant entered into valid Franchise Agreements.  The Court now turns to the question of whether, and to what extent, Plaintiffs are entitled to injunctive relief enforcing the non-competition provisions of those agreements.

New York has adopted the common-law standard of reasonableness for the evaluation of restrictive covenants.  Under this standard, "[a] restraint is reasonable only if it is (1) no greater than is required for the protection of the legitimate interest of the [beneficiary], (2) does not impose undue hardship on the [restricted party], and (3) is not injurious to the public."  BDO Seidman v. Hirshberg, 93 N.Y. 2d 382, 388 (1999).  "In this context a restrictive covenant will only be subject to specific enforcement to the extent that it is reasonable in time and area, necessary to protect the [beneficiary's] legitimate interests, not harmful to the general public and not unreasonably burdensome to the [restricted party]."  Id. (citation and internal quotation marks omitted); see also Singas Famous Pizza Brands, 468 Fed. App'x at 46-47 (enforcing 10-mile restriction on former franchisee as reasonable protection of franchisor's legitimate interests in protecting its "'knowledge and reputation'" and "'customer good will'") (citation omitted)).

Here, the restrictive covenant, as written, bars Defendant from competing in the ice cream business – retail and wholesale, mobile and fixed – for two years anywhere in the six counties identified by Plaintiffs as franchise territories, which comprise four boroughs of New York City and all of Long Island.  The Court takes judicial notice that the area for which Plaintiffs seek protection is well over 100 miles in length, and includes the homes and businesses of millions

of people.

Plaintiffs have clearly demonstrated a likelihood of success in showing the reasonableness of the covenant insofar as it applies to retail operations (fixed or mobile) in Defendant's former Mister Softee territories and areas proximate thereto.  Mr. Bouzitis explained credibly that recruiting a new franchise holder for the former territories will be far more difficult if the former franchise holder is operating in the same area, and that because of the short selling season it will take two years to establish a replacement franchisee.  Customer goodwill and business methods are legitimate spheres of protection with respect to former franchisee competition.  See Singas Famous Pizza, 468 F. App'x at 46.

Plaintiffs have failed, however, to make a clear showing as to why their legitimate business interests require restraint on Defendant's ability to compete in wholesale ice cream and supply operations or in retail distribution of ice cream or other frozen confections outside of Defendant's former territories and nearby areas.  They simply assert that a wholesale supply business would be a back-door avenue of competition and that any fixed base retail sales would also be competitive but, as they acknowledge, many other ice cream businesses operate in the territories, including independent vendors.  Plaintiffs have not demonstrated that the particulars of training or sales method knowledge, or any other training or experience gained by Defendant during his tenure with Mister Softee, would give him an unfair competitive advantage as a wholesale supplier or as a retail operator in areas where he has not garnered particularized customer knowledge or goodwill.  The Court therefore finds that Plaintiffs have failed on the current record to demonstrate a likelihood of success, or even sufficiently serious questions going to the merits, on their claim that the covenant is reasonable to the extent it would restrict wholesale

operations as such,[7] or retail ice cream sales in areas well outside of Defendant's former territories.

Under New York law, a court may partially enforce an overly broad non-compete covenant if plaintiff sought to protect a legitimate business interest.  BDO Seidman v. Hirshberg, 93 N.Y. 2d 382, 394 (1999).  Where "the unenforceable portion is not an essential part of the agreed exchange, a court should conduct a case specific analysis, focusing on the conduct of the [beneficiary] in imposing the terms of the agreement."  BDO Seidman, 93 N.Y. 2d at 394.  New York has rejected the strict divisibility, or "blue pencil," requirement, instead embracing flexible partial enforcement of restrictive covenants.  BDO Seidman, 93 N.Y. 2d at 395.  However, "[a] court should not attempt to partially enforce a non-compete provision where its infirmities are so numerous that the court would be required to rewrite the entire provision."  Leon M. Reimer & Co. v. Cipolla, 929 F. Supp. 154, 160 (S.D.N.Y. 1996).

The Court finds that Plaintiffs have demonstrated a legitimate business interest in preventing their former franchisee from engaging in retail ice cream sales in his former territories and in other Mister Softee franchisees' territories that are within a five-mile radius of his former territories for a period of two years from the termination of Defendant's franchises.  The Court finds that the restrictive covenant, narrowed in this fashion, is reasonable time and geographic scope and will not be oppressive in its operation as to Defendant's business, and is thus enforceable.  Cf. Carvel Corp. v. Eisenberg, 692 F. Supp. 182, 186 (S.D.N.Y. 1988) (barring franchisee from operating an ice cream shop within two miles of prior store for three years), and Golden Krust Patties, Inc. v. Bullock, 957 F. Supp. 2d 186, 199 (E.D.N.Y. 2013) (enjoining defendant from operating a Caribean-style restaurant within two and one half miles of a franchise

---

[7]     Because any injunction would also bind persons working in concert with Defendant, a wholesale operation that is set up to disguise Defendant's indirect operation of retail outlets in protected areas would violate even an injunction limited by its terms to retail sales.  See Fed. R. Civ. P. 65(d)(2).

location).

<u>Irreparable Harm to Plaintiffs' Businesses</u>

Plaintiffs have clearly demonstrated harm to their business if Defendant continues to use MSI's trademarks or confusingly similar marks.  The court may not presume that irreparable harm results from a trademark infringement.  <u>See Salinger v. Colting</u>, 607 F.3d 68, 78 (2d Cir. 2010) ("<u>eBay</u> strongly indicates that the traditional principles of equity it employed are the presumptive standard for injunctions in any context.") (citing <u>eBay, Inc. v. MercExchange, L.L.C.</u>, 547 U.S. 388, 391 (2006)).  "Instead, the court must actually consider the injury the plaintiff will suffer if he or she loses on the preliminary injunction but ultimately prevails on the merits, paying particular attention to whether the 'remedies available at law, such as monetary damages, are inadequate to compensate for that injury.'"  <u>Salinger</u>, 607 F.3d at 80 (quoting <u>eBay</u>, 547 U.S. at 391.  "Irreparable harm exists in a trademark case when the party seeking the injunction shows that it will lose control over the reputation of its trademark . . . because loss of control over one's reputation is neither 'calculable nor precisely compensable.'" <u>U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc.</u>, 800 F. Supp. 2d 515, 540 (S.D.N.Y. 2011), <u>aff'd</u>, 511 F. App'x 81 (2d Cir. 2013).

Here, Plaintiffs have made a clear showing that they will suffer irreparable harm in the form of customer confusion, loss of good will, and potential damage to their reputation if Defendant is allowed to continue to use confusing markings on his trucks.  Plaintiffs have shown that they will no longer be able to ensure that Defendant's trucks are stocked with proper ice cream products that are in compliance with Mister Softee's criteria.  Plaintiffs also demonstrated that they would not be able to ensure that Defendant's trucks are operated in a sanitary manner.  Because customers are likely to believe that Plaintiffs are responsible for the quality of Defendant's products and service, Plaintiffs' reputations will be irreparably injured as a result of Defendants continued use of confusing marks if the quality falls below Mister Softee standards.  Similarly, if

Defendant provides good service that is different from the standard Mister Softee service while selling confusingly similar marks, he will undermine the uniformity of products and services that is associated with the Mister Softee marks.

Plaintiffs have also clearly demonstrated that they will suffer irreparable harm through loss of good will of its customers and difficulty in establishing replacement franchisees if Defendant competes as a retail seller in his former territories or those of other Mister Softee franchisees in close proximity to his former territories before the two-year restrictive covenant period has elapsed.  "Courts applying New York law have recognized that restrictive covenants in franchise agreements are also necessary to neutralize the 'danger that former franchisees will use the knowledge they have gained from the franchisor to serve its former customers, and that continued operation under a different name may confuse customers and thereby damage the good will of the franchisor.'"  Singas Famous Pizza, 468 F. App'x at 46 (quoting ServiceMaster Residential/Commercial Servs., L.P. v. Westchester Cleaning Servs., Inc., 01 Civ. 2229, 2001 WL 396520, at *3 (S.D.N.Y. Apr. 19, 2001)).

Public's Interest in Prevention of Confusion for Customers

There is nothing in the record to indicate that the public interest would be harmed in any way by the issuance of a preliminary injunction in this case.

The Second Circuit has determined that there is a "strong interest in preventing public confusion."  ProFitness Physical Therapy Ctr. v. Pro-Fit Orthopedic & Sports Physical Therapy P.C., 314 F.3d 62, 68 (2d Cir. 2002).  Because Plaintiffs have demonstrated that the injunction sought will stop Mister Softee consumers from being confused by Defendant's marks, this injunction is clearly in the public interest.  Enforcement of the covenant not to compete within reasonable parameters is also consistent with the public interest in upholding reasonable contractual undertakings and protecting the value of franchises.

Security

Under Federal Rule of Procedure 65(c), a party seeking a preliminary injunction must post a "security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."  The Court finds that a $50,000 bond is sufficient to provide for any costs and damages sustained by Defendant should he be found to have been improperly restrained.

CONCLUSION

For the foregoing reasons, Plaintiffs' motion for preliminary injunction is granted in part.  A separate Preliminary Injunction Order will be entered.

Dated: New York, New York
        June 5, 2014

　　　　　　　　　　　　　　　　　　　　　　　     /S Laura Taylor Swain     
                                        LAURA TAYLOR SWAIN
                                        United States District Judge

# Appendix

# Mister Softee Exhibits

:v-01975-LTS   Document 17   Filed 04/25/14   P













Case 1:14-cv-01975-LTS   Document 17   Filed 04/25/14   Page 13 of 16



# Master Softee Exhibits



Case 1:14-cv-01975-LTS   Document 17   Filed 01/25/14   Page 16 of 16



# Soft King Exhibits



Deft Exhibit PID
5-28-2014  4:06pm(R)

Deft Exhibit PIC
5-28-2014
4:06 PM (N)

