```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

MISTER SOFTEE, INC. et al.,

        Plaintiffs,

    -v-                                                    No. 14 CV 1975-LTS-RLE

DIMITRIOS TSIRKOS,

        Defendant.

-------------------------------------------------------x
```

<u>MEMORANDUM OPINION AND ORDER WITH PERMANENT INJUNCTION</u>

In this action, Plaintiffs, Mister Softee, Inc. ("MSI"), Mister Softee of Queens Inc. ("MSQ"), and Spabo Ice Cream Corp. ("Spabo," and, collectively with MSI and MSQ, "Plaintiffs") assert claims of trademark infringement and unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125, and state law claims for breach of contract against Defendant Dimitrios Tsirkos ("Defendant"). The Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1367.

Plaintiffs have now moved for default judgment pursuant to Federal Rule of Civil Procedure 55(b)(2) on their trademark infringement and contract claims, and to dismiss Defendant's counterclaims pursuant to Federal Rule of Civil Procedure 41(b) and (c). Plaintiffs seek a permanent injunction, specific enforcement of a covenant not to compete, money damages, together with pre- and post-judgment interest, and attorneys' fees and costs. No opposition has been filed by Defendant. For the following reasons, Plaintiffs' motion for default judgment is granted. Plaintiffs' motion for dismissal of Defendant's counterclaims is also granted.

BACKGROUND

A summary of the facts relevant to this opinion are summarized below.[1] The dispute between the parties centers on the terms and breach of six franchise agreements that Defendant entered into with Plaintiff Spabo on March 1, 2013, (Peter Bouziotis Aff. Supp. Pl. Mot. Default J. ("Bouziotis Aff.") ¶ 4, June 4, 2015, dkt. entry no. 180); one franchise agreement that Defendant entered into with Plaintiff MSQ on September 26, 2011, (Craig Zoly Aff. Supp. Pl. Mot. Default J. ("Zoly Aff.") ¶ 4, June 4, 2015, dkt. entry no. 181); and nine oral licenses that Defendant entered into with Plaintiff MSQ in April 2011. (Id.)

Plaintiff MSI owns a federal trademark registration for the design of the "Mister Softee" ice cream truck, a sensory mark for the "Mister Softee" jingle, and other related trademarks ("Mister Softee trademarks"). (Mem. Op. at 2.) MSI licenses the Mister Softee trademarks to MSQ and Spabo, who then license them to franchisees under the terms of written franchise agreements and oral licenses. (Id. at 3.) The MSQ and Spabo franchise agreements ("Franchise Agreements"), which are substantially similar to each other, specify the territorial area in which a franchisee may use the Mister Softee trademarks and the terms to which a franchisee must adhere in order to avoid breach and termination of the Franchise Agreements. (Id.) The Franchise Agreements provide, in relevant part, that: they are governed by New York

---

[1] For a fuller discussion of the facts underlying the dispute, see this Court's Memorandum Opinion dated June 5, 2014 ("Mem. Op."), (dkt. entry no. 51), in which the Court made findings of fact. Other facts summarized herein pertaining to damages are taken from affidavits and documentary evidence submitted in support of Plaintiffs' motion for default judgment. Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997) (in a default judgment, the court may rely on affidavits rather than hold inquest when determining damages); see also Mason Tenders Dist. Council v. Duce Constr. Corp., No. 02CV9044, 2003 WL 1960584, at *2 (S.D.N.Y. Apr. 25, 2003) (in default judgment motion, court may rely on evidence submitted by plaintiffs in support of their affirmative case).

law (Zoly Aff. Ex. A at § 22.1; Bouziotis Aff. Ex. A at § 22.1[2]); they will last for ten years (id. at § 3.1); the franchisee will pay annual royalty fees equal to the greater of $1.70 per gallon of soft-serve ice cream mix and $3,400 (id. at § 4.2); MSQ, Spabo, or MSI, may recover "reasonable attorneys' fees, court costs, and litigation expenses" incurred in seeking to compel a franchisee's compliance with the franchise agreement (id. at § 9); for two years following termination of the franchise agreement, the franchisee will not compete with MSQ, or Spabo (id. at § 16.2); termination may occur without notice upon the franchisee's failure to park its vehicle at a depot designated by MSQ or Spabo (id. at §§ 18.1, 18.2.14); and, upon termination, the franchisee must pay all unpaid fees to MSQ and Spabo.  (Id. at § 19.2.)

At some point after entering into the Franchise Agreements, Defendant stopped making royalty payments and stopped parking his trucks in approved depots, in breach of the Franchise Agreements.  (Mem. Op. at 4.)  On February 18, 2014, Plaintiffs sent Defendant a document titled "Notice of Default and Termination," notifying Defendant that he was in breach of the Franchise Agreements and that Plaintiffs were terminating the agreements due to that breach.  (Compl. Ex. C. 1, March 20, 2014, dkt. entry no. 2.)  In the notice, Plaintiffs demanded strict compliance with post-termination contract procedures.  (Id. at 2.)  Following breach and termination, Defendant continued using Mister Softee trademarks, or confusingly similar trademarks, and operating ice cream trucks in his former Mister Softee territories, in contravention of the Franchise Agreements.  (Mem. Op. at 4-6.)  Defendant continued these activities after Plaintiffs served Defendant with the Complaint on March 22, 2014.  (Id.; see also Affidavit of Service, March 26, 2014, dkt. entry no. 4.)

---

[2]  All six Spabo Franchise Agreements are appended to the Peter Bouziotis Affidavit dated June 4, 2015, at Exhibit A. The six franchise agreements are identical and reference to any section of the franchise agreements refers to the same section in each of the contracts.

On March 20, 2014, Plaintiffs filed their Complaint, asserting one count of trademark infringement and unfair competition under the Lanham Act, and four counts of breach of contract for Defendant's violation of the post-termination non-compete clause and failure to pay royalties under the written Franchise Agreements and oral licenses. (Compl. at ¶¶ 31-66.) On May 2, 2014, Defendant filed an Answer, and asserted various counterclaims: (1) that the nine oral licenses under which Plaintiffs collected royalties from Defendant were null and void; (2) that the written Franchise Agreements with MSQ and Spabo were void because Plaintiffs had failed to provide Defendant with a written prospectus at the time of sale; (3) that Plaintiffs MSQ and Spabo had breached the Franchise Agreements themselves by failing to provide Defendant with promised assistance, and by allowing competitors to operate in Defendant's Mister Softee territories; and (4) that Defendant had loaned MSQ and Spabo a total of $21,000, which Plaintiffs had never repaid. (Def.'s Answer ¶¶ 29-69, dkt. entry no. 19.)

On April 24, 2014, Plaintiffs moved for a preliminary injunction against Defendant. (Pl. Mot. Prelim. Inj., dkt. entry no. 12.) In its Preliminary Injunction Order dated June 5, 2014 ("Preliminary Injunction Order"), the Court granted Plaintiffs' motion and enjoined Defendant from unlawfully using Plaintiffs' trademarks, or confusingly similar marks, including "Master Softee" and "Soft King," and from participating in an ice cream retail business within five miles of Defendant's former Mister Softee territories. (Prelim Inj. Order, dkt. entry no. 52.) Defendant subsequently violated the Preliminary Injunction Order, and the Court found Defendant in civil contempt on two occasions, in a Memorandum Order dated July 2, 2014 ("Jul. 2014 Contempt Order," dkt. entry no. 77), and a Memorandum Order dated August 1, 2014 ("Aug. 2014 Contempt Order," dkt. entry no. 105.)

On March 18, 2015, Defendant's counsel moved to withdraw from Defendant's representation, citing non-payment of fees. (Derek J. Famulari Decl. Supp. Mot. Withdraw

Att'y, March 18, 2015, dkt. entry no. 164; Justin M. Klein Decl. Supp. Mot. Withdraw Att'y, March 18, 2015, dkt. entry no. 167.) Magistrate Judge Ronald L. Ellis granted the motions on March 20, 2015, and ordered Defendant to either obtain new counsel and cause them to appear by April 20, 2015, or verify to the Court that Defendant would be proceeding pro se. ("Judge Ellis Order" 1-2, March 20, 2015, dkt. entry no. 169.) The Judge Ellis Order also warned Defendant that his failure to comply in a timely fashion could result in a default judgment being entered against him. (Id.) Defendant did not file the required statement, and no appearance was filed, by April 20, 2015, or thereafter.

On May 8, 2015, the Clerk of the Court issued a certificate of default against Defendant. (Clerk's Certificate of Default, dkt. entry no. 174.) Pursuant to this Court's Individual Rules, Plaintiffs moved for default judgment on June 4, 2015. (Pl. Mot. Default. J., dkt. entry no. 178.) Plaintiffs seek $284,864.19 in money damages, together with pre- and post-judgment interest, representing royalties due under the Franchise Agreements ($183,600 for Spabo, and $101,264.19 for MSQ), a permanent injunction, dismissal of Defendant's counterclaims, and fees and costs. (Id.) The motion was accompanied by evidence in support of Plaintiffs' damages claims. Defendant has not responded to the instant motions for default judgment and dismissal of counterclaims.

The Court has carefully considered Plaintiffs' moving papers, the preliminary injunction hearing record, and all other relevant submissions. For the following reasons, Plaintiffs' motions are granted.

DISCUSSION

A. Plaintiffs' Motion for Default Judgment

In determining whether to grant a default judgment, a district court must consider

the following factors: (1) "whether the defendant's default was willful; (2) whether defendant has a meritorious defense to plaintiff's claims; and (3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment." Mason Tenders Dist. Council v. Duce Constr. Corp., No. 02CV9044, 2003 WL 1960584, at *2 (S.D.N.Y. Apr. 25, 2003). In the Second Circuit, "court[s] may find a default to have been willful where the conduct of counsel or the litigant was egregious and was not satisfactorily explained." SEC v. McNulty, 137 F.3d 732, 738 (2d Cir. 1998). Where a party initially appears and answers, but subsequently fails to continue in the case, a default judgment can still issue. See Guggenheim Capital, LLC v. Birnbaum, 722 F.3d 444, 454 (2d Cir. 2013); City of New York v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 129 (2d Cir. 2011) (a district court is empowered to enter a default judgment against a defendant that has failed to "otherwise defend" the suit). The decision of whether to grant default judgment lies within the sound discretion of the district court. See Shah v. New York, 168 F.3d 610, 615 (2d Cir. 1999).

    All three factors here support granting Plaintiffs' motion for default judgment. Defendant's willfulness is underscored by the fact that he had initially appeared in the action, including to testify, but deliberately chose not to continue. Defendant disregarded the Court's Preliminary Injunction Order, requiring the Court to issue two contempt orders in July and August of 2014, to enforce compliance. Defendant never complied with the Judge Ellis Order, dated March 20, 2015, requiring Defendant to notify the Court of new representation or of Defendant's intention to proceed pro se. Furthermore, Defendant was duly served with the instant default motion papers (Pl. Aff. Service Mot Default J. Ex A., June 4, 2015, dkt. entry no. 178), and has failed to respond. All of these factors support a finding of willfulness. Although Defendant filed an Answer in the action, the summary denials contained within the Answer do

not enable the Court to evaluate whether any meritorious defenses exist, and Defendant has not responded to the instant motion for default to present any such defenses.[3] And finally, a court may presume that the non-defaulting party has been prejudiced by the defaulting party's failure to defend their actions and prosecute their claim.  See Orbital Publ'g Grp., Inc. v. Bank of America, N.A., No. 11CV3065, 2012 WL 1309187, at *3 (S.D.N.Y. Apr. 16, 2012).  Here, in particular, given Defendant's history of failing to comply with the Court's orders, and the fact that he has twice been found in contempt for violating the Preliminary Injunction Order, denial of their default judgment motion would be unfairly prejudicial to Plaintiffs.  See Mason Tenders Dist. Council, 2003 WL 1960584, at *3.  Accordingly, Plaintiffs' motion for default judgment is granted with respect to Plaintiffs' Lanham Act and breach of contract claims.

B.      Remedies

Where a default judgment has been granted, the court must still satisfy itself that there is a sufficient evidentiary basis for granting the relief that Plaintiffs seek.  See Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981).

1.      Permanent Injunction

Plaintiffs seek to convert the preliminary injunction granted by the Court on June 5, 2014, into a permanent injunction barring Defendant from unlawfully using "Mister Softee" trademarks, or confusingly similar marks, and from competing with Mister Softee franchisees within five miles of Defendant's former Mister Softee territories.  (Pl. Am. Mot. Default J. ¶ 11, June 4, 2015, dkt. entry no. 182.)  This Court granted Plaintiffs preliminary injunctive relief after

---

[3]  Although the Defendant did appear to defend against the motion for a preliminary injunction, the Court, in concluding that a preliminary injunction was warranted, found Defendant's arguments to be non-meritorious.  (See Mem. Op. 6-7, 11-13.)

Plaintiffs established: (1) a likelihood of success on the merits of their claims for trademark infringement and enforcement of the non-compete clause, (2) that Plaintiffs would suffer irreparable harm to their reputation and franchise business model if injunctive relief was withheld, and (3) that no remedy at law could adequately compensate Plaintiffs for the loss of goodwill and reputation.  (Mem. Op. 10-18.)

"A permanent injunction is appropriate where the party seeking the injunction has succeeded on the merits and shows the absence of an adequate remedy at law and irreparable harm if the relief is not granted."  Patsy's Italian Rest., Inc. v. Banas, 658 F.3d 254, 272-73 (2d Cir. 2011); see also Amoco Prod. Co. v. Vill. of Gambell, AK, 480 U.S. 531, 546 n. 12 (1987) ("The standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that the plaintiff must show a likelihood of success on the merits rather than actual success.")

To succeed on a trademark infringement claim, a plaintiff must first show that protection of the mark is warranted, i.e., that the mark is valid, which can be done by showing the mark to be "distinctive" and not "generic."  Christian Louboutin S.A. v. Yves Saint Laurent America Holdings, Inc., 696 F.3d 206, 216 (2d Cir. 2012).  Here, Plaintiffs' Mister Softee trademarks are registered on the Principal Register of the United States Patent and Trademark Office ("USPTO"), and thus are presumptively valid.  American Ort, Inc. v. Israel, No. 07CV2332, 2007 WL 2049733, at *4 (S.D.N.Y. Jul. 17, 2007).  Defendant has not challenged Plaintiffs' ownership of the Mister Softee trademarks, nor rebutted the presumption that they are valid.

Second, a plaintiff must show that defendant's use of the mark will lead to customer confusion.  Christian Louboutin S.A., 696 F.3d at 217.  During the preliminary

injunction litigation, Plaintiffs presented evidence of actual confusion of customers. (See Mem. Op. 6.) The risk of consumer confusion is heightened, and need for injunctive relief is made more compelling, when a former licensee is involved because "there is an increased danger that consumers will be confused and believe that the former trademark is still an authorized representative of that trademark holder." Sunward Electronics, Inc. v. McDonald, 362 F.3d 17, 25 (2d Cir. 2004). Here, moreover, Defendant has actively sought to benefit from customer confusion between the Mister Softee ice cream trucks and Defendant's similar designs by selling in his former Mister Softee territories, despite this Court's Preliminary Injunction Order barring Defendant from doing so, and two civil contempt orders.

Plaintiffs have also presented sufficient evidence to show that they will suffer irreparable harm absent injunctive relief. As discussed in the Memorandum Opinion, dated June 5, 2014 ("Memorandum Opinion"), this Court found that Defendant's use of similar truck decoration, and his operation of those trucks in Mister Softee franchised territories would cause harm because the confusingly similar decorations would cause customers to associate the Defendant's trucks with Plaintiffs' trademark and products. (See Mem. Op. at 6.) As Plaintiffs have no actual control over the quality of Defendant's products or services, decrements in quality or failure to maintain sanitary standards would reflect badly on Plaintiffs and their franchisees, while the similarity in marks used to solicit customers would undermine the goodwill and competitive value associated with Mister Softee and its trademarks. (Mem. Op. at 6). Harms such as those mentioned above cannot be adequately addressed by money damages. (Id.) See also Singhas Famous Pizza Brands Corp. v. New York Adver. LLC, No. 10CV8976, 2011 WL 497978 at *6 (S.D.N.Y. Feb. 10, 2011) (finding that loss of good will, defined as "the intangible worth of buyer momentum emanating from the reputation and integrity earned by the

company," may constitute irreparable harm); Sunward Electronics, Inc., 362 F.3d at 25 ("[W]hen in the licensing context unlawful use and consumer confusion have been demonstrated, a finding of irreparable harm is automatic." (internal quotation marks anc citation omitted)).  Having thus proven their trademark infringement claim and shown that Defendant's actions have caused irreparable harm that money damages cannot adequately remedy, Plaintiffs are entitled to a permanent injunction enjoining Defendant from unlawfully using Mister Softee trademarks, or confusingly similar marks.

   To succeed on the merits of their claim for specific enforcement of a restrictive covenant under New York law, Plaintiffs must show that the restraint is reasonable.  See BDO Seidman v. Hirshberg, 93 N.Y.2d 382, 388-89 (N.Y. 1999) ("A restrictive covenant will only be subject to specific enforcement to the extent that it is reasonable in time and area, necessary to protect the employer's legitimate interests, not harmful to the general public and not unreasonably burdensome to the employee." (citation omitted)).  In granting the preliminary injunction, this Court held that enforcement of the non-compete clause was warranted in so far as it was narrowed to only bar Defendant from operating a competitive retail ice-cream business within five miles of Defendant's former Mister Softee territory for two years, a period of protection provided by Section 16.2 of the Franchise Agreements.  (Mem. Op. 15; Zoly Aff. Ex. A at § 16.2; Bouziotis Aff. Ex. A at § 16.2.)  Plaintiffs ask that the same scope of injunctive relief previously granted be extended into a permanent injunction.  Defendant has failed to respond to the instant motion or otherwise present evidence contrary to the findings made in the Memorandum Opinion, and thus gives the Court no reason to depart from its prior holdings.  The requested permanent injunction will therefore be granted.  Because Defendant continued to compete in the restricted area even after the preliminary injunction was issued, (see Jul. 2014

Contempt Order; Aug. 2014 Contempt Order), an extension of the prohibited period through August 1, 2016, is warranted. That date is two years from this Court's second contempt order, which found that Defendant was continuing to operate his ice cream trucks in the proscribed areas, in violation of this Court's preliminary injunction enforcing the Franchises' Agreements covenant not to compete. (Aug. 2014 Contempt Order.)

    2.  Damages

Plaintiffs seek to recover $284,864.19 in damages, comprising unpaid royalties owed to MSQ, future royalties owed to MSQ, and future royalties owed to Spabo.[4]

Plaintiff MSQ requests monetary damages in the amount $74,064.19, together with pre- and post-judgment interest, representing royalty charges Defendant incurred under the MSQ Franchise Agreement and the nine oral licenses. In support of this request, Plaintiffs submitted the Affidavit of Craig Zoly, President of MSQ, explaining the nature, date, and amount of unpaid charges attributable to Defendant. (Zoly Aff. ¶¶ 1-12, Ex. B.) Plaintiffs also submitted forms labeled "Accounts Receivables," indicating the charges Defendant incurred for each of the ten trucks Defendant operated under the written franchise agreement and nine oral licenses with MSQ. (Id.) This evidentiary submission is uncontested and is sufficient to demonstrate MSQ's entitlement to the royalties. The Court finds that MSQ is entitled to recover $74,064.19 for unpaid royalties.

Plaintiffs MSQ and Spabo also claim $27,200 and $183,600 in damages, respectively, for future royalties they would have earned under the Franchise Agreements had Defendant fully performed. The amounts correspond to the minimum annual payment of $3,400

---

[4] The Franchise Agreements are governed by New York State law. (Zoly Aff. Ex. A § 22.1; Bouziotis Aff. Ex. A § 22.1.) As shown above, Defendant is liable for breach of nine oral licenses with MSQ, one written franchise agreement with MSQ, and six written franchise agreements with Spabo.

that the Franchise Agreements provided would be due to Spabo and MSQ. (Zoly Aff. Ex. A at § 4.2; Bouziotis Aff. Ex. A at § 4.2.) At the time of Defendant's breach, the MSQ contract had eight years left to run, and each of the six Spabo contracts had nine years left to run. The requested amounts correspond to the minimum $3,400 annual payment required by the contracts for each future year of each contract term. Defendant has not disputed the computations. Accordingly, MSQ is awarded $27,200 for future royalties, and Spabo is awarded $183,600 for future royalties.

        Plaintiffs also request pre- and post-judgment interest. Under New York law, pre-judgment interest is recoverable in a breach of contract action, computed from the earliest ascertainable date the cause of action existed. N.Y. C.P.L.R. 5001. "In New York, a breach of contract cause of action accrues at the time of the breach." Ely-Cruikshank Co. v. Bank of Montreal, 81 N.Y.2d 399, 402 (N.Y. 1993). The earliest ascertainable date of the cause of action in this case is February 18, 2014, representing the date Plaintiffs sent Defendant the "Notice of Default and Termination" and requested strict compliance with all post-termination procedures, including payment of all unpaid fees and other monies owed to Plaintiffs under the agreements. (Zoly Aff. Ex. A § 19.2; Bouziotis Aff. Ex. A §19.2.) Pre-judgment interest will be therefore awarded from February 18, 2014, at the rate of nine percent per annum. See N.Y. C.P.L.R. § 5004. Post-judgment interest will accrue in accordance with 28 U.S.C. § 1961, from the date judgment is entered. Gamble v. East Bronx N.A.A.C.P. Day Care Center, No. 04CV1198, 2008 WL 2115237, at *2-3 (S.D.N.Y. May 15, 2008).

        3.     Plaintiffs' Request for Attorneys' Fees, Court Costs, and Litigation Costs

        Plaintiffs also request that the Court award them reasonable attorneys' fees and litigation costs pursuant to 15 U.S.C. § 1117(a) and Section 9 of the Franchise Agreements. In

New York, "a contract that provides for an award of reasonable attorneys' fees to the prevailing party in an action to enforce the contract is enforceable if the contractual language is sufficiently clear."  Gallagher's NYC Steakhouse Franchising, Inc. v. N.Y. Steakhouse of Tampa, Inc., No. 11CV1456, 2011 WL 6034481, at *6 (S.D.N.Y. Dec. 5, 2011) (citation omitted).  The contractual language in Section 9 of the Franchise Agreements provides that, if a franchisee is in breach of any material obligation under the agreement and MSQ, Spabo, or MSI must "engage[] an attorney to enforce its rights (whether or not formal judicial proceedings are initiated), [franchisee] shall pay all reasonable attorney's fees, court costs and litigation expenses . . . ." (Zoly Aff. Ex. A, at § 9; Bouziotis Aff. Ex. A, at § 9.)  Because the language of the agreements clearly entitle Plaintiffs to reasonable attorneys' fees and costs, Plaintiffs' motion for recovery pursuant to the contract is granted and the Court will not reach the question of whether Plaintiffs are entitled to recover under 15 U.S.C. § 1117(a).  Plaintiffs may apply for an award of attorneys' fees and expenses pursuant to Federal Rule of Civil Procedure 54(d).  The fee motion must be supported by evidence of the fees and expenses incurred.

C.   Plaintiffs' Motion for Dismissal of Defendant's Counterclaims for Failure to Prosecute

Plaintiffs have moved to dismiss Defendant's counterclaims for failure to prosecute.  In his Answer, Defendant asserted counterclaims against MSQ and Spabo for violating the Federal Franchise Act by selling oral licenses; violating the New York Franchise Act by failing to provide a prospectus at the time of selling the franchise; and breach of contract. In reviewing a request to dismiss counterclaims for failure to prosecute, the Second Circuit has focused on five principal factors: (1) the duration of Defendant's failure to prosecute counterclaims and/or comply with court orders, (2) whether Defendant was on notice that further

delays would result in dismissal, (3) whether the moving party is likely to be prejudiced by further delay, (4) a balancing of the need to alleviate court congestion against the non-moving party's rights to due process and a fair chance to be heard, and (5) whether lesser sanctions would be adequate.  See United States ex. rel. Drake v Norden Sys., Inc., 375 F.3d 248, 254 (2d Cir. 2003); see also Pizzulli v Northwestern Mutual Life Ins. Co., No. 05CV1889, 2006 WL 490097, at *1 (S.D.N.Y. Feb. 28, 2006) (establishing the same standard for dismissing defendant's counterclaims as for dismissal motion directed to plaintiff's affirmative case).

   All five factors support dismissing Defendant's counterclaims.  Defendant still has not complied with the Judge Ellis Order to obtain new counsel or proceed pro se; the Judge Ellis Order gave Defendant notice of the risk that a default judgment would be entered against Defendant if he failed to comply.  Prejudice arising from Defendant's failure to act is properly presumed.  See Orbital Publ'g Grp., Inc., 2012 WL 1309187, at *1-2.  Defendant has not shown any intent or desire to participate in the litigation and prosecute his counterclaims; therefore, fairness dictates that other litigants actively seeking the right to be heard should be granted preference in light of the Court's busy schedule.  See Bonda Indus. (HK) Co., Ltd., No. 08CV5507, 2009 WL 159267, at *2 (S.D.N.Y. Jan. 22, 2009) (finding in favor of defendant on the fourth factor, balancing court congestion, where plaintiff had taken no action to avoid dismissal by either complying with court orders or providing reason for failure to do so).  Lastly, Defendant was already twice found in contempt and ordered to pay judgment in the amount of $97,464.14, and yet has persisted in his dilatory behavior.  There is no reason to believe that additional sanctions, short of dismissal, would be effective in rectifying Defendant's behavior.

   For the reasons stated above, Defendant's counterclaims are dismissed.

CONCLUSION

For the foregoing reasons, Plaintiffs' motion for default judgment is granted. The Clerk of the Court is directed to enter judgment in favor of MSQ for $101,264.19, plus pre-judgment interest of $16,055.23, for a total of $117,319.42. The Clerk of the Court is further directed to enter judgment in favor of Spabo in the amount of $183,600, plus pre-judgment interest of $29,109.40, for a total of $212,709.40. Post-judgment interest shall accrue at the 28 U.S.C. § 1961 rate.

Defendant is hereby enjoined, through August 1, 2016, from directly or indirectly, owning, maintaining, engaging in, being employed by, lending money to, extending credit to, or having any interest in any other business which operates or licenses businesses featuring primarily the retail sale of ice cream or other frozen confections within Defendant's former territories, to wit:

> a. Astoria, New York: Northern boundary - Hoyt Avenue to Astoria Boulevard, Southern boundary - 30th Street, Eastern boundary - Steinway Street and Western boundary - the Hudson River;
>
> b. Manhattan: Northern boundary - 62nd Street, Southern boundary - 60th Street, Western boundary - 8th Avenue and Eastern boundary - 6th Avenue;
>
> c. Manhattan: Northern boundary - 60th Street, Southern boundary - 59th Street, Eastern boundary - 6th Street and Western boundary - Central Park;
>
> d. Manhattan: Northern boundary - 58th Street, Southern boundary - 56th Street, Western boundary -West Side Highway and Eastern boundary 6th Avenue;
>
> e. Manhattan: Northern boundary - 60th Street, Southern boundary - 58th Street, Western boundary - West Side Highway and Eastern Boundary - 8th Avenue;

    f. Manhattan: Northern boundary - 62nd Street, Southern boundary 60th Street, Eastern boundary - 8th Avenue and Western boundary - West Side Highway;

    g. Manhattan: Northern boundary - 60th Street, Southern boundary - 58th Street, Western boundary - 8th Avenue and Eastern boundary - 6th Avenue.

Defendant is further enjoined, during the foregoing period, from directly or indirectly, owning, maintaining, engaging in, being employed by, lending money to, extending credit to, or having any interest in any other business which operates or licenses businesses featuring primarily the retail sale of ice cream or other frozen confections in Mister Softee franchisee territories that are within five miles of Defendant's former franchise territories.

 Defendant is permanently enjoined from unlawfully using Plaintiffs' federally registered trademarks or any names or marks confusingly similar to the Plaintiffs' trademarks, including but not limited to the "Master Softee" and "Soft King" marks and trade dress.

 Plaintiffs' motion to dismiss Defendant's counterclaims is granted, and Plaintiffs' motion for reasonable attorneys' fees and costs is granted.  Plaintiffs must make their application for an award of fees and costs, supported by evidence, in accordance with Federal Rule of Civil Procedure 54(d), within 30 days.  The Clerk of the Court is requested to enter judgment accordingly and close this case.

 This Memorandum Opinion and Order with Permanent Injunction resolves docket entry number 178.

Dated: New York, New York
   November 23, 2015

                    /s/ Laura Taylor Swain
                    LAURA TAYLOR SWAIN
                    United States District Judge