UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

MISTER SOFTEE, INC., MISTER SOFTEE OF
QUEENS, INC., and SPABO ICE CREAM CORP.,

                                        Plaintiffs,

                    -against-

                                                            Case No: 14 CV 1975 (LTS)

DIMITRIOS TSIRKOS a/k/a JIMMY TSIRKOS,

                                        Defendant.

-----------------------------------------------------------------X

---

## MEMORANDUM OF LAW

---

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S CROSS-MOTION TO MODIFY THE SUPPLEMENTAL JUDGMENT AND IN OPPOSITION TO PLAINTIFF'S MOTION TO MODIFY THE COURT'S INSTALLMENT PAYMENT ORDER FOR INTERVENING JUDGMENTS**

MOULINOS & ASSOCIATES LLC
Attorneys for Defendant
150 East 58th Street, 25th Floor
New York, New York 10022
(212) 832-5981

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..............................................................................................................ii

PRELIMINARY STATEMENT ........................................................................................................1

SUMMARY OF FACTS ...................................................................................................................2

ARGUMENT ....................................................................................................................................4

      I.     THE COURT'S INSTALLMENT PAYMENT ORDER
           SHOULD NOT BE EXTENDED TO COVER INTERVENING
           JUDGMENTS ...................................................................................................................4

      II.    THE COURT SHOULD MODIFY THE SUPPLEMENTAL JUDGMENT GIVEN
           THAT IT WAS GRANTED BASED ON EXCESSIVE, INFLATED, AND
           UNREASONABLE ATTORNEY FEE CHARGES……………………………….7

CONCLUSION ...............................................................................................................................21

# TABLE OF AUTHORITIES

**Cases**

Baiz v. Baiz, 10 A.D.3d 375, 780 N.Y.S.2d 770 (2nd Dept. 2004) ................................................ 5

Cosgrove v. Sears, Roebuck and Co., No. 81 CIV. 3482, 1996 WL 99390 (S.D.N.Y. March 7, 1996) ......................................................................................................................................... 8

Diaz v. Audi of America, Inc., 57 A.D.3d 828, 873 N.Y.S.2d 308 (2nd Dept. 2008) .................... 7

Gamache v. Steinhaus, 776 N.Y.S.2d 310 (App. Div. 2d Dep't 2004) ......................................... 7

Greenstein v. Greenstein, 65 A.D.3d 607, 884 N.Y.S.2d 458 (2nd Dept. 2009) ............................ 4

Gutierrez v. Direct Mktg. Credit Servs., 267 A.D.2d 427, 701 N.Y.S.2d 116 (2nd Dept. 1999).... 7

Haggerty v. Market Basket Enterprises, Inc., 8 A.D.3d 618, 779 N.Y.S.2d 562 (2nd Dept. 2004)  4

Herpe v. Herpe, 122 N.E. 204, 225 N.Y. 323 (N.Y. 1919) ........................................................ 5

Jakobleff v. Jakobleff, 108 A.D.2d 725, 484 N.Y.S.2d 892 (2nd Dept. 1985) ............................... 4

Knitwaves, Inc. v. Lollytogs Ltd. (Inc.), No. 92 CIV. 6285, 1996 WL 99379 (S.D.N.Y. March 7, 1996) ......................................................................................................................................... 8

Leham Bros. Finance S.A. v. Shenkman, No. 01 CIV. 7701, 2002 WL 417204 (S.D.N.Y. March 18, 2002) ................................................................................................................................... 7

Matter of Fiorillo v. New York State Dept. of Envtl. Conservation, 162 A.D.2d 730, 558 N.Y.S.2d 659 (3rd Dept. 1990) .................................................................................................. 4

Miller v. Realty Assoc. v. Amendola, 51 A.D.3d 987, 859 N.Y.S.2d 258 (2nd Dept. 2008) .......... 7

Mosher v. Davita Healthcare Partners Inc., No. 15 CV 7594, 2016 WL 3963131 (S.D.N.Y. July 20, 2016) ................................................................................................................................... 8

Mount Sinai Hosp. v. Country Wide Ins. Co., 81 A.D.3d 700, 916 N.Y.S.2d 228 (2nd Dept. 2011) ................................................................................................................................................... 4

Perez v. Heckler, No. 82 CIV. 8627, 1984 WL 62847 (S.D.N.Y. March 1, 1984) ....................... 8

RMP Capital Corp. v. Victory Jet, LLC, 139 A.D.3d 836, 32 N.Y.S.3d 836 (2nd Dept. 2016) ..... 7

Rotunno v. Gruhill Const. Corp., 29 A.D.3d 772, 816 N.Y.S.2d 139 (2nd Dept. 2006) ................ 5

Tait v. Lattingtown Harbor Development Co., 12 A.D.2d 966, 211 N.Y.S.2d 543 (2nd Dept. 1961) ................................................................................................................................................ 5

Ward-Carpenter Engineers, Inc. v. Sassower, 193 A.D.2d 730, 598 N.Y.S.2d 534 (2nd Dept. 1993) ................................................................................................................................................ 4

**Statutes**

28 U.S.C. Section 3204 ................................................................................................................. 4

CPLR Section 5019(a) .................................................................................................................. 4

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

MISTER SOFTEE, INC., MISTER SOFTEE OF
QUEENS, INC., and SPABO ICE CREAM CORP.,

                            Plaintiffs,

              -against-
                                                    Case No: 14 CV 1975 (LTS)
DIMITRIOS TSIRKOS a/k/a JIMMY TSIRKOS,

                            Defendant.
----------------------------------------------------------------X

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
CROSS-MOTION TO MODIFY THE SUPPLEMENTAL JUDGMENT
AND IN OPPOSITION TO PLAINTIFFS' MOTION TO MODIFY THE COURT'S
INSTALLMENT PAYMENT ORDER FOR INTERVENING JUDGMENTS**

---

## PRELIMINARY STATEMENT

Plaintiffs Application seeking to modify the Court's Installment Payment Order to have it cover intervening judgments must be denied outright. Plaintiffs utterly fail in their papers to fulfill the requirements of the New York Civil Procedure Laws and Rules ("CPLR") to modify an installment payment order in order to allow it to cover intervening judgments since Plaintiffs are merely attempting to re-litigate an issue which was already presented to the Court rather than raising a mistake, defect, or irregularity with the Installment Payment Order.

Additionally, the Court should grant Defendant's Cross-Motion to modify the Supplemental Judgment for attorney fees previously granted to the Plaintiffs given that a review of the invoices upon which that Supplemental Judgment was granted reveals that such invoices

1

contain excessive, inflated and unjustifiable legal fees billed by Plaintiffs' attorneys which are unreasonable and have no basis to be charged.

## SUMMARY OF FACTS

In March 2014, Plaintiffs filed this action against Mr. Tsirkos alleging various claims of trademark infringement of the "Mr. Softee" brand of ice cream and unfair competition. (Docket Entry No. 2).

On June 5, 2014, this Court granted a Preliminary Injunction Order ("Preliminary Injunction") against Mr. Tsirkos which effectively enjoined him from operating a business featuring the retail sale of ice cream within the former territories he serviced while operating Mr. Softee ice cream trucks. (Docket Entry No. 52).

Mr. Tsirkos was found in contempt on two (2) prior occasions, July 2, 2014 and August 1, 2014 (Docket Entry Nos. 77 and 105) for failing to comply with this Court's Preliminary Injunction Order dated June 5, 2014 (Docket Entry No. 52).

A Contempt Judgment was entered by the Court on October 2, 2014, ("the Contempt Judgment") against Mr. Tsirkos for being in contempt of the Preliminary Injunction and Mr. Tsirkos was ordered to pay Plaintiffs $97,464.14. (Docket Entry No. 129).

On March 18, 2015, Mr. Tsirkos' then attorneys of record, Marks & Klein LLP, moved this Court seeking to withdraw as Mr. Tsirkos' counsel. (Docket Entry No. 166).  On March 20, 2015, the Court granted that application and instructed Mr. Tsirkos to retain new counsel. (Docket Entry No. 169).

Mr. Tsirkos did in fact proceed to retain new counsel for this action, Perry Tischler, Esq., however that attorney never filed an appearance in this action.

2

Prior to the entry of the Installment Payment Order, on November 11, 2015, the Court entered a default judgment against Mr. Tsirkos, partially in favor of Plaintiff Mister Softee of Queens Inc., in the amount of $117,319.42, and partially in favor of Plaintiff Spabo Ice Cream Corp., in the amount of $212,709.40 ("the Default Judgment") (Docket Entry No. 207).

On May 3, 2016, an Installment Payment Order ("the Installment Payment Order") was issued by the Court ordering Mr. Tsirkos to make monthly payments to the Plaintiffs, in the amount of $6,000.00 per month, until the Contempt Judgment was paid. (Docket Entry No. 226). The Installment Payment Order only applied to payment of the Contempt Judgment and not to any other judgments.

A Supplemental Judgment for the attorney fees and costs allegedly incurred by the Plaintiffs was also entered against Mr. Tsirkos on May 24, 2016, in the amount of $339,863.85 (Docket Entry No. 229).  The application for the Supplemental Judgment was unopposed owing to the fact that Mr. Tsirkos' attorney, Perry Tischler, Esq., failed to appear in this action.[1]

In total, the judgments entered against Mr. Tsirkos in this action amount to $767,356.81. Plaintiffs now seek to extend this Court's Installment Payment Order to cover the other intervening judgments, specifically the Default Judgment, totaling $330,028.82, and the Supplemental Judgment for Plaintiffs' attorney fees in the amount of $339,863.85.  The Default Judgment and Supplemental Judgment are collectively referred to as "the Intervening Judgments".

---

[1] It should be noted that Mr. Tsirkos has filed a legal malpractice action in the Supreme Court of the State of New York against Mr. Tischler for his failure to appear in this action.  Mr. Tischler has also failed to appear in the legal malpractice action filed against him and an application for a default judgment is now pending in that action.

3

## ARGUMENT

### I.    THIS COURT'S INSTALLMENT PAYMENT ORDER SHOULD NOT BE EXTENDED TO COVER INTERVENING JUDGMENTS

This Court should not extend its Installment Payment Order in the present case to cover the Intervening Judgments.

CPLR §5019(a) permits the Court to cure, during any stage of action, any mistake, defect or irregularity in a judgment or order so long as such a correction would not affect a substantial right of a party. A court, however, cannot modify a judgment or order if no mistake, defect, or irregularity is involved, and a party simply attempts to raise an issue that was not previously litigated. Ward-Carpenter Engineers, Inc. v. Sassower, 193 A.D.2d 730, 598 N.Y.S.2d 534 (2nd Dept. 1993) citing Matter of Fiorillo v. New York State Dept. of Envtl. Conservation, 162 A.D.2d 730, 558 N.Y.S.2d 659 (3rd Dept. 1990), Jakobleff v. Jakobleff, 108 A.D.2d 725, 484 N.Y.S.2d 892 (2nd Dept. 1985). See also Greenstein v. Greenstein, 65 A.D.3d 607, 884 N.Y.S.2d 458 (2nd Dept. 2009) (stating that a branch of a motion made approximately three years after the entry of a judgment, to amend said judgment to allow movant a right of first refusal to purchase the marital residence sought a substantive change and should be denied). In fact, CPLR §5019(a) is strictly limited to ministerial matters. Haggerty v. Market Basket Enterprises, Inc., 8 A.D.3d 618, 779 N.Y.S.2d 562 (2nd Dept. 2004).

CPLR §5019(a) is not the appropriate mechanism to seek to change a judgment with respect to a substantive matter. Mount Sinai Hosp. v. Country Wide Ins. Co., 81 A.D.3d 700, 916 N.Y.S.2d 228 (2nd Dept. 2011). An installment payment order unquestionably is considered a judgment or order. See 28 U.S.C. 3204. Parties may not attempt to amend a renewal judgment, simply so that they can enjoy a more favorable computation method. Baiz v. Baiz, 10 A.D.3d 375, 780 N.Y.S.2d 770 (2nd Dept. 2004).

Absent a reservation of jurisdiction to determine the substantive issue of an award for attorney's fees, courts have been loath to extend judgments or orders if attorney fees are at stake. See Rotunno v. Gruhill Const. Corp., 29 A.D.3d 772, 816 N.Y.S.2d 139 (2nd Dept. 2006), Tait v. Lattingtown Harbor Development Co., 12 A.D.2d 966, 211 N.Y.S.2d 543 (2nd Dept. 1961) (stating that absent a reservation of jurisdiction to determine counsel fees or expenses, there is no authority or power of the court to make a subsequent order or additional judgment for attorney fees).

Clerical errors or a mistake in the entry of the judgment or the omission of a right or relief to which a party is entitled as a matter of course may alone be corrected by the trial court through an amendment.  Herpe v. Herpe, 122 N.E. 204, 225 N.Y. 323 (N.Y. 1919).  A provision withholding or awarding costs is a substantive part of a judgment in an action in equity and cannot be amended.  Id.

The Plaintiffs in their instant application, while claiming that they seek to extend the Installment Payment Order to cover the intervening judgments, are essentially seeking a modification of the Installment Payment Order.  Their application is not based on any mistake, defect or irregularity in the Installment Payment Order and should be denied given that CPLR §5019(a) only allows a modification of a judgment or order for those stated reasons.

The issue of which judgments shall be covered under the Installment Payment Order has been resolved by this Court which ruled that the Installment Payment Order only applies to the Contempt Judgment.  Plaintiffs made no reservation of jurisdiction for the Installment Payment Order to apply to any future or intervening judgment in this action let alone any subsequent application for attorney fees.

On May 3, 2016, when the Court issued the Installment Payment Order, after an evidentiary hearing where Plaintiffs appeared and presented evidence in support of their application, Plaintiffs did not request that the Installment Payment Order apply to the Default Judgment that was entered against Mr. Tsirkos on November 25, 2015 for $330,028.82, even though Plaintiffs were clearly aware of this additional judgment and could have easily included this amount in the May 3, 2016 Order *sua sponte*.

Additionally, Plaintiffs did not at any time request a reservation of jurisdiction to have the Installment Payment Order apply to a future application for attorney fees, despite the fact that as of May 3, 2016, the Plaintiffs had already submitted an application for attorney fees to this Court.

Defendant would be greatly prejudiced if the Court modified the Installment Payment Order to have it apply to the intervening judgments given that Plaintiff was not represented at the time those judgments were entered against him.  Of particular importance is the fact that, as is further stated below, the Supplemental Judgment for attorney fees granted by this Court was based on invoices containing excessive, exorbitant and inflated legal fees charged by Plaintiffs' attorneys.  Had Mr. Tsirkos been properly represented at the time Plaintiffs' application for attorney fees was made, this Court would have been alerted to such excessive charges.

Similarly, there was no evidence submitted to the Court at the hearing for the Supplemental Judgment that Plaintiffs actually had paid all the fees and charges reflected in Plaintiffs counsel's invoices.

Plaintiffs, by their failure to reserve their right to apply the Installment Payment Order to the intervening judgments, waived their right to do so.  They are now precluded from doing so

by CPLR §5019(a) as their application is not made based on any mistake, defect or irregularity. Accordingly, the Court should deny Plaintiffs' instant application in its entirety.

**II.     THE COURT SHOULD MODIFY THE SUPPLEMENTAL JUDGMENT GIVEN THAT IT WAS GRANTED BASED ON EXCESSIVE, INFLATED AND UNREASONABLE ATTORNEY FEE CHARGES**

This Court should modify the Supplemental Judgment granting Plaintiffs an award of $339,863.85 in attorney fees given that it was granted based on invoices submitted by Plaintiffs' counsel which contained entries of excessive, inflated and exorbitant legal fees which are not justifiable. These fees include charges for an inflated amount of document review, dining, beverages, and unnecessary hotel expenses, and most egregiously, a five-page default judgment motion that allegedly took forty-two hours to draft and edit.

The determination of a reasonable attorney fee is left to the sound discretion of the trial court. RMP Capital Corp. v. Victory Jet, LLC, 139 A.D.3d 836, 32 N.Y.S.3d 836 (2nd Dept. 2016) citing Miller Realty Assoc. v. Amendola, 51 A.D.3d 987, 859 N.Y.S.2d 258 (2nd Dept. 2008). The determination must be based upon a demonstration of the hours reasonably expended on the litigation and what is reasonable compensation for the attorney based upon the prevailing rate for similar work in the community. Gamache v. Steinhaus, 7 A.D.3d 525, 776 N.Y.S.2d 310 (2nd Dept. 2004), Gutierrez v. Direct Mktg. Credit Servs., 267 A.D.2d 427, 701 N.Y.S.2d 116 (2nd Dept. 1999).

In general, factors to be considered include (1) the time and labor required, the difficulty of the questions involved, and the skill required to handle the problems presented; (2) the lawyer's experience, ability, and reputation; (3) the amount involved and the benefit resulting to the client from the services; (4) the customary fee charged for similar services; (5) the

contingency of certain compensation; (6) the results obtained; and (7) the responsibility involved.  Diaz v. Audi of America, Inc., 57 A.D.3d 828, 873 N.Y.S.2d 308 (2nd Dept. 2008). Courts have used their broad discretion to modify awards of attorney fees.  See Lehman Bros. Finance S.A. v. Shenkman, No. 01 CIV. 7701, 2002 WL 417204 (S.D.N.Y. March 18, 2002) (District Court reduced an award of $55,530.00 in attorney fees to $21,211.31 because bills reflected many items that began with the word "review").

Courts have broad discretion in modifying and reducing determinations of attorney fees that they deem to be unfair.  See Perez v. Heckler, No. 82 CIV. 8627, 1984 WL 62847 (S.D.N.Y. March 1, 1984) (stating that, a ten-year practitioner practicing in her area of specialization who billed fifty-seven hours in preparation for a substantive review motion, and twenty-seven hours and fifteen minutes in preparation for the instant motion should have her attorney fee cut in half); See also Knitwaves, Inc. v. Lollytogs Ltd. (Inc.), No. 92 CIV. 6285, 1996 WL 99379 (S.D.N.Y. March 7, 1996) (holding that an award of $143,460.52 in attorney fees should be reduced by 25%, to $107,595.39, because several of plaintiff's claims were unsuccessful and the time expended on pursuing those claims was unnecessary).

Courts will also reduce attorney fees when many of the descriptions of the work performed are vague, such as "review of file," "review of documents" and "review of adversary's letter."  See Cosgrove v. Sears, Roebuck and Co., No. 81 CIV. 3482, 1996 WL 99390 (S.D.N.Y. March 7, 1996) (reducing a desired award of $270,000.00 in attorney fees to $47,355.50 because of the vague nature of many of the charges and the excessive hourly rate). In determining an award of attorney fees, Courts must exclude excessive, redundant, or otherwise unnecessary hours.  See Mosher v. Davita Healthcare Partners Inc., No. 15 CV 7594, 2016 WL 3963131 (S.D.N.Y. July 20, 2016) (stating that seventy hours worked on a

straightforward motion to remand is excessive, and reducing the fee compensation to correspond with thirty hours worked).

A review of the invoices submitted by Plaintiffs' attorneys in support of their application for attorneys' fees reveals excessive, inflated and extraordinary charges which are not justifiable. First, Plaintiffs' attorneys Fisher Zucker LLC ("the Fisher firm") spent an inordinate amount of time merely reviewing materials in this action. While a normal review of materials and documents in a legal action is certainly expected and necessary in every matter, the following entries of the Fisher firm shatters the "expected and necessary" barrier:

- On June 27, 2014, Frank Reino spent 1.20 hours reviewing a scheduling order and sending e-mails from the Court totaling fees of $408.00. This was the scheduling order that was presumably filed on this date, which was only six pages in length, and should not have taken 1.20 hours to review [Exhibit A, p 6].

- On July 2, 2014, Jeffrey Zucker spent 1.40 hours reviewing the opinion on the contempt motion and exchanging unspecified emails charging fees of $560.00. This opinion was presumably only ten pages in length and it is completely unclear how much time Mr. Zucker spent sending e-mails [Ex A, p 7].

- On July 17, 2014, Gregory Kallet spent 1.10 hours reviewing the complaint, answer with counterclaims, preliminary injunction opinion, contempt petition, and contempt order totaling fees of $357.00. It is unclear how a review of these documents, after the action had already been commenced and was in the full course of litigation, resulted in any benefit. [Ex A, p 9].

- On July 17, 2014, Jeffrey Zucker spent 1.00 hour reviewing affidavits and opposition to contempt motion #2, totaling fees of $400.00. These affidavits were presumably only nine pages in length and should not have taken 1.00 hour to review [Ex A, p 9].

- On July 21, 2014, Jeffrey Zucker spent 1.50 hours reviewing affidavits and P.I. findings, totaling fees of $600.00. It is unclear what affidavits and findings Mr. Zucker is referring to, or what this review actually accomplished [Ex A, p 9].

- On August 12, 2014, Jeffrey Zucker spent 0.90 hours reviewing the affidavit and support for retail sales and sales of trucks totaling fees of $360.00. This affidavit was presumably one page in length [Ex A, p 10].

- On August 12, 2014, Frank Reino spent 5.00 hours reviewing "Jimmy's" affidavit and comparing "Jimmy's" prior affidavit to the new affidavit, totaling fees of $1,700.00. This affidavit presumably refers to the affidavit of Mr. Tsirkos which was approximately five pages. [Ex A, p 10].

- On October 2, 2014, Frank Reino spent 0.50 hours reviewing the judge's order and $97,000.00 judgment against Tsirkos totaling $170.00 in legal fees. This judgment is presumably the Contempt Judgment which was only two pages yet took Mr. Reino thirty minutes to review [Ex A, p 14].

- On October 31, 2014, Frank Reino spent 1.80 hours on a telephone call with opposing counsel reviewing a letter from opposing counsel totaling fees of $612.00. There is no indication what this phone call accomplished or what amount of 1.80 hours was dedicated to that call and a review of opposing counsel's letter [Ex A, p 15].

- Over an eleven-day period, from December 19 through December 30, 2014, Frank Reino spent 9.30 hours reviewing deposition transcripts and discovery documents, totaling fees of $3,162.00. It is unclear exactly what discovery documents and deposition transcripts Mr. Reino reviewed [Ex A, p 19].

- On January 7, 2015, Frank Reino spent 1.00 hour reviewing a letter from opposing counsel and a discovery response, totaling fees of $365.00. It is unclear exactly what letter Mr. Reino reviewed, or what this review accomplished [Ex A, p 20].

- On January 29, 2015, Frank Reino spent 0.20 hours reviewing a court order, totaling fees of $73.00. This presumably refers to the order on motion for a Local Rule 37.2 conference, which is exactly one page in length [Ex A, p 21].

- On February 3, 2015, Frank Reino spent 1.00 hours reviewing documents produced by Tsirkos, totaling fees of $365.00. It is unclear what documents Mr. Reino reviewed, or what this review accomplished [Ex A, p 22].

- On February 10, 2015, Frank Reino spent 1.80 hours reviewing discovery produced, totaling fees of $657.00. It is unclear what discovery Mr. Reino reviewed, or what this review accomplished [Ex A, p 22].

- On February 13, 2015, Frank Reino spent 1.80 hours reviewing deposition transcripts, totaling fees of $657.00. It is unclear what deposition transcripts Mr. Reino reviewed during this time, or what said review accomplished [Ex A, p 22].

- On February 16, 2015, Frank Reino spent 3.50 hours reviewing transcripts, totaling fees of $1,277.50. It is unclear what deposition transcripts Mr. Reino reviewed during this time, or what said review accomplished [Ex A, p 22].

- On February 20, 2015, Frank Reino spent 2.80 hours reviewing transcripts from the deposition of witnesses and from defendant, totaling fees of $1,022.00. It is unclear what deposition transcripts Mr. Reino reviewed during this time, or what this review accomplished [Ex A, p 22].

- On March 4, 2015, Gregory Kallet spent 2.80 hours reviewing the complaint, answer with counterclaims, motions, affidavits, correspondence, etc. for purposes of preparing summary judgment notice, totaling fees of $980.00. It is unclear what motions, affidavits, and correspondence Mr. Kallet reviewed, but the answer and counterclaims in this case are only eleven pages [Ex A, p 24].

- On May 8, 2015, Frank Reino spent 0.90 hours reviewing an order from the court, totaling fees of $328.50. This is presumably the order on the motion for entry of default, which is only half a page in length [Ex A, p 28].

- On May 27, 2015, Frank Reino spent 1.80 hours reviewing e-mails from his client and reviewing bank records from Santander, totaling fees of $657.00. It is unclear how long these e-mails were or how extensive the bank records were [Ex A, p 29].

- On September 11, 2015, Frank Reino spent 1.00 hour reviewing a bank production subpoena, totaling fees of $365.00. It is unclear how extensive this bank production subpoena was [Ex A, p 32].

- On September 18, 2015, Frank Reino spent 4.20 hours reviewing bank records produced by Alma, Santander, and Citi banks, totaling fees of $1,533.00. Plaintiffs' counsel fails to elaborate on the breadth of these bank records [Ex A, p 32].

- On September 24, 2015, Frank Reino spent 1.00 hours reviewing bank records, totaling fees of $365.00. It is unclear what bank records Mr. Reino was reviewing or what this review accomplished [Ex A, p 32].

- On November 3, 2015, Frank Reino spent 4.00 hours reviewing the deposition of Nektoria Otta, totaling fees of $1,460.00 [Ex A, p 34]. Indeed, the actual deposition of Ms. Otta was, presumably, less than 4.00 hours thereby a review of her deposition transcript would take less time than that.

- On November 11, 2015, Frank Reino spent 3.80 hours reviewing documents produced by Astralease, totaling fees of $1,387.00. It is unclear what these documents contained, or what this review accomplished [Ex A, p 34].

- On November 23, 2015, Frank Reino spent 1.20 hours reviewing a letter and permit applications from NYC Parks and Recreation, totaling fees of $438.00. It is unreasonable to spend that amount of time reviewing a letter and permit applications [Ex A, p 35].

11

While Plaintiffs' counsel's attorney fees for review alone are undoubtedly excessive, there are additional charges that appear to be for ambiguous activities.  Furthermore, some of the billing records show that Plaintiffs' counsel has spent inappropriate and excessive amounts of time on activities that, while valid, should not require nearly as much time or attention as Plaintiffs' counsel expended in this action.  For example:

- On April 21, 2014, Frank Reino spent 2.80 hours editing a preliminary injunction motion and a brief motion, totaling fees of $952.00 [Ex A, p 2].  It is unclear why edits to one motion, which was twenty-three pages, should take nearly three hours.

- On May 15, 2014, Frank Reino spent 0.60 hours "calculating potential risk" and charged fees totaling $204.00 [Ex A, p 3].  It is unclear what this term even means, or what the calculation entails.

- On July 7, 2014, Frank Reino spent 3.40 hours on something called "attention to investigation of Tsirkos' trucks," totaling fees of $1,156.00 [Ex A, p 7].  Again, the lack of specificity in this entry fails to demonstrate the specific legal services rendered.

- On February 5, 2015, Frank Reino **spent 2.00 hours e-mailing his client** regarding Tsirko's deposition, totaling fees of $730.00 [Ex A, p 22].  It is astounding and impossible to believe that an experienced attorney would need two hours to draft an e-mail to a client.  It would generally be expected that an attorney with so much information to provide to a client would communicate that information either in person or by telephone.

- On March 2, 2015, Gregory Kallet spent 0.60 hours "digesting Tsirkos' deposition for [a] summary judgment motion, totaling fees of $210.00 [Ex A, p 24].  It is unclear what this means, and it is even more unclear as to why it should take over a half an hour.

- On March 2, 2015, Gregory Kallet spent 2.10 hours doing legal research regarding a motion for summary judgment, totaling fees of $735.00 [Ex A, p 24].  It is entirely excessive for an experienced attorney to spend over two hours doing legal research regarding summary judgment.  In fact, no motion for summary judgment was ever filed in this action, making this charge even more questionable.

- On March 3, 2015, Jeffrey Zucker spent 0.30 hours on "discovery and tax return issues," totaling fees of $127.50 [Ex A, p 24].  This entry is far too vague to inform the reader what Mr. Zucker was actually doing during this time.

- On March 4, 2015, Gregory Kallet spent 1.30 hours on preparing the subject matter index for Jimmy Tsirkos' deposition for a summary judgment motion, totaling fees of $455.00 [Ex A, p 24]. No summary judgment motion was ever filed in this action making this entry totally unnecessary.

- On March 4, 2015, Jeffrey Zucker spent 1.00 hour on something called "attention to discovery issues," totaling fees of $425.00 [Ex A, p 24]. The meaning of this entry is entirely vague and unclear, and it is unreasonable for an experienced attorney to spend one hour engaged in such work.

- On March 6, 2015, Gregory Kallet spent 1.00 hour drafting the subject matter index of the Tsirkos deposition, totaling fees of $350.00 [Ex A, p 24]. It is unreasonable for an experienced attorney to spend an hour creating an index, especially in light of the fact that Mr. Kallet spent over an hour preparing the index two days prior to this entry.

- On March 11, 2015, Gregory Kallet spent 1.80 hours researching "no genuine issue of material fact as to damages as [a] basis for [a] summary judgment motion," totaling fees of $630.00 [Ex A, p 24]. No summary judgment motion was ever filed in this action making this entry totally unnecessary.

- On March 23, 2015, Jeffrey Zucker spent 0.20 hours on something called "attention to counsel issue," totaling fees of $85.00 [Ex A, p 25]. This entry is entirely vague and unclear and could mean that Mr. Zucker was involved in any number of activities.

- On March 24, 2015, Jeffrey Zucker spent 0.20 hours on something called "attention to Tsirkos' attempt to depose Softee," totaling fees of $85.00 [Ex A, p 25]. Again, it is unclear what this entry means, and it is unclear how much time and what kind of attention opposing counsel's attempt to depose Mister Softee requires.

- On April 2, 2015, Jeffrey Zucker spent 0.40 hours on something called "attention to summary judgment motion," totaling fees of $170.00 [Ex A, p 26]. No summary judgment motion was ever filed in this action making this work questionable. In fact, as of March 18, 2015, Mr. Tsirkos' prior attorneys had filed a motion to be relieved as counsel and a motion for a default judgment was filed by Plaintiffs shortly thereafter.

- On April 27, 2015, Frank Reino spent 5.70 hours "researching default issue," drafting a default motion and exchanging emails with his client and an accountant's attorney for a total of $2,080.50 in legal fees. [Ex A, p. 26]. This entry does not discern how much time was spent on each task and it is incomprehensible that over five hours would have been spent to research whether Mr. Tsirkos was in default.

13

- On November 5, 2015, Frank Reino **spent 3.50 hours e-mailing opposing counsel** and drafting a contempt motion, totaling fees of $1,277.50 [Ex A, p 34]. This entry does not discern how much time was spent on e-mailing opposing counsel and how much time was spent drafting and should therefore be rejected outright as unjustifiable.

- On November 6, 2015, Frank Reino **spent 5.20 hours e-mailing opposing counsel**, reviewing Tsirkos' wife's deposition transcript, and drafting a contempt motion, totaling fees of $1,898.00 for his services [Ex A, p 34]. It is impossible to believe that this work would take an experienced attorney over five hours to complete. Additionally, as stated above, Mr. Reino already had billed 4.00 hours reviewing Ms. Otta's transcript.

- On November 16, 2015, Frank Reino spent 2.00 hours sending e-mails to opposing counsel regarding settlement, totaling fees of $730.00 [Ex A, p 35].

This final entry is shocking as it cannot reasonably be believed that an attorney would spend 2.00 hours sending emails regarding a settlement that never materialized. In fact, as of that date, Mr. Tsirkos was represented by Perry Tischler, Esq., who had not filed an appearance in this action. This only leads to the conclusion that, if Mr. Reino had engaged Mr. Tischler for two (2) hours discussing settlement of this action, Mr. Tischler was undeniably involved and fully aware of the proceedings in this action.

Even though the Fisher firm's charges for review and other vague activities are undeniably astounding, perhaps the most egregious portion of their fees involved the drafting of a default judgment motion that was submitted to the Court on June 4, 2015 [Docket No. 178]. This motion is only five (5) pages in length and, when including exhibits and a certificate of service amounts to just thirteen (13) pages in total. As most seasoned litigators and the Court will acknowledge, a motion for a default judgment is generally the simplest and easiest motion a litigator can draft, drawing on the basic premise that a party has failed to appear, answer or act in an action.

14

Plaintiffs' counsel, however, spent an incredible forty-two (42) hours of time drafting and editing this motion.  It is unfathomable that experienced attorneys would require this amount of time to draft such a routine document and charge approximately $15,564.00 for this kind of work product.  The breakdown of the inordinate amount of time Plaintiffs' counsel spent on this document is included below:

- On April 27, 2015, Jeffrey Zucker spent 0.20 hours drafting the motion for default judgment, totaling fees of $85.00 [Ex A, p 26].

- On April 27, 2015, Frank Reino spent 5.70 hours drafting the motion for default judgment, totaling fees of $2,080.50 [Ex A, p 26].

- On April 29, 2015, Frank Reino spent 5.50 hours drafting the motion for default judgment, totaling fees of $2,007.50 [Ex A, p 26].

- On April 30, 2015, Jeffrey Zucker spent 0.90 hours drafting the motion for default judgment, totaling fees of $382.50 [Ex A, p 26].

- On May 4, 2015, Frank Reino spent 3.60 hours drafting the motion of entry of default, totaling fees of $1,314.00 [Ex A, p 28].

- On May 5, 2015, Frank Reino spent 2.70 hours drafting the motion for default judgment, totaling fees of $985.50 [Ex A, p 28].

- On May 11, 2015, Jeffrey Zucker spent 0.80 hours drafting the default judgment motion, totaling fees of $340.00 [Ex A, p 28].

- On May 11, 2015, Frank Reino spent 5.00 hours drafting the default judgment motion, totaling fees of $1,825.00 [Ex A, p 28].

- On May 12, 2015, Frank Reino spent 5.50 hours drafting the motion for default judgment, totaling fees of $2,007.50 [Ex A, p 28].

- On May 13, 2015, Frank Reino spent 3.40 hours drafting the motion for default judgment, totaling fees of $1,241.00 [Ex A, p 28].

- On May 15, 2015, Frank Reino spent 3.00 hours on something called "attention to default," which one could assume involved the drafting of the default judgment motion, totaling fees of $1,095.00 [Ex A, p 28].

- On May 20, 2015, Jeffrey Zucker spent 2.00 hours drafting the motion for default judgment, totaling fees of $850.00 [Ex A, p 28].

15

- On May 21, 2015, Frank Reino spent 3.70 hours editing the motion for default judgment, totaling fees of $1,350.50 [Ex A, p 28].

The excessive, inflated, and inexplicable charges billed by the Fisher firm for this default judgment should be prima facie evidence that the invoices submitted to this Court to justify an award of attorney fees against Mr. Tsirkos are unjustified and egregious.  The Court must outright reject these charges and remove them from the Supplemental Judgment.

The total amount of legal fees submitted by the Fisher firm which are inflated, excessive and unjustified is $47,691.50.

Meanwhile, Plaintiffs' co-counsel Tor Ekeland, P.C., ("the Tor firm") also engaged in an excessive amount of review in this action.  There is no evidence that the Tor firm provided any services which contributed to any result or activity that was not already provided by the Fisher firm.  Indeed, the Tor firm simply piled on legal fees and hours and did not provide any required legal service in this action.  A list of the charges submitted by the Tor firm to this Court, in furtherance of the application for attorney fees against Mr. Tsirkos, are as follows:

- On July 14, 2014, Mark Jaffe spent 0.59 hours reviewing documents submitted by Jeffrey Zucker in support of a motion for contempt, totaling fees of $147.57 [Exhibit B, p 3].  This motion, presumably, was only seventeen pages.

- On October 15, 2014, Fred Jennings spent 0.56 hours reviewing SDNY filing papers, totaling fees of $111.78 [Ex B, p 4].  There is no reason why an experienced attorney should spend over half an hour reviewing filing papers.

- On October 24, 2014, Fred Jennings spent 0.50 hours reviewing the ECF docket and documents, totaling fees of $100.00 [Ex B, p 5].  There is no reason why an experienced attorney should spend half an hour reviewing the docket.

- On March 18, 2015, Fred Jennings spent 0.37 hours reviewing recent filings in SDNY matter, totaling fees of $74.78 [Ex B, p 8].  There is no reason why a review of recent filings should even be billed at all.

- On March 20, 2015, Mark Jaffe spent 1.01 hours reviewing motion for contempt documents provided by Fisher Zucker, totaling fees of $251.88 [Ex B, p 8].  It is

16

inconceivable that it would take an experienced attorney over an hour to review corresponding motion documents.

- On March 23, 2015, Fred Jennings spent 2.10 hours reviewing a motion for contempt, totaling fees of $420.89 [Ex B, p 8]. It does not appear that Plaintiffs filed a motion for contempt around this time, making this charge questionable.

- On March 30, 2015, Fred Jennings spent 0.12 hours reviewing the docket for a stip filing, totaling fees of $24.89 [Ex B, p 10]. It is unnecessary for an experienced attorney to charge a client for merely checking the docket.

- On April 24, 2015, Fred Jennings spent 0.82 hours reviewing the motion draft from Fisher Zucker, totaling fees of $164.00 [Ex B, p 11]. Presumably, this was the motion for entry of default, which was only six pages.

- On May 5, 2015, Mark Jaffe spent 0.18 hours reviewing the notice of motion for default judgment, the memorandum of law, the proposed order, and the affidavit, totaling fees of $46.04 [Ex B, p 18]. Together, these documents, presumably, only totaled approximately ten pages.

- On May 21, 2015, Mark Jaffe spent 0.06 hours reviewing a request to the Court to file a motion for default judgment, totaling fees of $14.31 [Ex B, p 18]. A mere review of a request by the Court should not be charged.

- On May 25, 2015, Fred Jennings spent 0.49 hours reviewing the default judgment motion filings, totaling fees of $61.22 [Ex B, p 17]. This motion was only thirteen pages, including exhibits.

- On May 27, 2015, Mark Jaffe spent 0.06 hours reviewing the Court order regarding the motion for summary judgment, totaling fees of $13.82 [Ex B, p 18].

- On October 30, 2015, Fred Jennings spent 0.19 hours reviewing the docket, totaling fees of $38.22 [Ex B, p 24]. It is unclear why Mr. Jennings was reviewing the docket at this point.

- On November 13, 2015, Mark Jaffe spent 0.14 hours reviewing e-mail correspondence with Fred Jennings and Frank Reino regarding the contempt hearing, totaling fees of $35.28 [Ex B, p 28]. It is unclear why Mr. Jaffe needed to review an e-mail at this point.

- On November 17, 2015, Fred Jennings spent 1.58 hours reviewing documents, deposition transcripts, and subpoena records, totaling fees of $317.00 [Ex B, p 28]. This information is vague and unclear as to how much time Mr. Jennings spent working on each task.

17

- On November 17, 2015, Mark Jaffe spent 0.25 hours reviewing a letter from Frank Reino regarding the contempt hearing, totaling fees of $62.99 [Ex B, p 29].  It is unclear why it was necessary for Mr. Jaffe to review a letter.

- On November 30, 2015, Mark Jaffe spent 0.23 hours reviewing motion papers for release on bond and the order for default judgment, totaling fees of $58.26 [Ex B, p 29].  This order, presumably, was only sixteen pages in length.

None of the above entries for legal services by the Tor firm were justifiable or resulted in any kind of actual legal service to the Plaintiffs.  The work rendered by the Tor firm was simply duplicative of the work rendered by the Fisher firm. The total amount of legal fees billed by the Tor firm, which were wholly unnecessary, was $1,943.53.   The entire amount of their legal fees should be deducted from the Supplemental Judgment as there is no showing or evidence that they provided any necessary services or work in this action which was not duplicative of the work performed by the Fisher firm.

The same holds true for the law firm of Adler Vermillion LLP ("the Adler firm").  The Adler firm appears to have been retained almost exclusively to conduct unnecessary review in this action.  Their attorneys provided no legal services which contributed to any result or activity that was not already provided by the Fisher firm. Examples of the entries in the invoices submitted by the Adler firm to this Court in furtherance of Plaintiffs' application for legal fees against Mr. Tsirkos are as follows:

- On March 19, 2014, Jerry Derevyanny spent 1.50 hours reviewing the complaint, including verifying exhibit references, totaling fees of $300.00 [Exhibit C, p 2].

- On March 20, 2014, Jerry Derevyanny spent 3.20 hours continuing to review the complaint, totaling fees of $640.00 [Ex C, p 2].  This document was only eighteen pages.

- On April 23, 2014, Jerry Derevyanny spent 2.00 hours reviewing the "PI" motion, totaling fees of $400.00 [Ex C, p 3].  This document presumably refers to the preliminary injunction motion, which was only twenty-three pages.

- On April 24, 2014, Jerry Derevyanny spent 1.80 hours reviewing and filing motion documents, totaling fees of $360.00 [Ex C, p 3]. It is completely unnecessary to take nearly two hours to review and file documents.

- On May 14, 2014, Jerry Derevyanny spent 1.90 hours reviewing Defendant's pleadings and deposition in preparation for hearing, totaling fees of $380.00 [Ex C, p 3]. Defendant's answer and counterclaims were only eleven pages and his deposition transcript was only fifty-nine pages.

- On June 9, 2014, Jerry Derevyanny spent 0.70 hours reviewing the Court's preliminary injunction decision, totaling fees of $140.00 [Ex C, p 4]. This decision presumably contained only three pages of text.

- On June 12, 2014, Jerry Derevyanny spent 3.80 hours reviewing an Order to Show Cause, totaling fees of $760.00 [Ex C, p 4]. This document presumably refers to the Order to Show Cause that was filed on that date, which was only two pages.

- On June 23, 2014, Jerry Derevyanny spent 0.50 hours reviewing court filings for the motion for contempt, totaling fees of $100.00 [Ex C, p 4]. It is unclear exactly what filings Mr. Derevyanny reviewed.

The total amount of legal fees billed by the Adler firm total $3,080.00. The entire amount of their legal fees should be deducted from the Supplemental Judgment as there is no showing or evidence that they provided any necessary services or work in this action which was not duplicative of the work performed by the Fisher firm.

The Fisher firm, which is located in Philadelphia, Pennsylvania commuted to the Court to appear for hearings and other Court proceedings. As the Court is aware, a commute to the Court from Philadelphia requires a 90-minute trip on Amtrak. However, the Fisher firm charged expensive hotel stays for trips to New York which are unjustifiable. Even more egregious and excessive was the fact that the Fisher firm charged for food and beverage expenses while travelling on Amtrak and for restaurant expenses while staying in New York. A summary of these charges is as follows:

- On June 13, 2014, Fisher Zucker LLC charged their clients $408.21 for the New York Marriott [Ex A, p 11].

19

- On July 14, 2014, Fisher Zucker LLC charged their clients $537.39 for the New York Marriott [Ex A, p 11].

- On July 31, 2014, Fisher Zucker LLC charged their clients $2.75 for USA Snack and Soda Vendor [Ex A, p 11].

- On August 1, 2014, Fisher Zucker LLC charged their clients $108.18 for TGI Friday's restaurant [Ex A, p 11].

- On August 1, 2014, Fisher Zucker LLC charged their clients $14.25 for Amtrak Acela Café [Ex A, p 11].

- On August 2, 2014, Fisher Zucker LLC charged their clients $579.48 for the New York Marriott [Ex A, p 11].

These foods and travel charges are unjustifiable and unnecessary.  The total amount of charges billed by the Fisher firm for hotels, food and beverages is $1,650.26.

The total amount of all charges and expenses billed by Plaintiffs' counsel that are excessive, unnecessary, unreasonable and unjustified is $54,365.29.

The Supplemental Judgment was granted by the Court based on the unchallenged and un-scrutinized invoices submitted by Plaintiffs' counsel in their application.  Clearly, these charges are excessive, inflated and unwarranted.  The attorney fees awarded to the Plaintiffs should be reduced as they do not reflect charges and time which were reasonably necessary, or actually expended, in this action.

Even a brief review of these bills reveals that Plaintiffs' counsel spent an inordinate amount of time reviewing documents that were often short in length and inconsequential to the litigation.  Furthermore, Plaintiffs' counsel inappropriately charged clients for unnecessary food, drinks, and hotel accommodations.  Most egregiously, Plaintiffs' counsel incomprehensibly charged Plaintiffs for forty-two hours of work, which resulted in a five-page default judgment motion.  Now, Plaintiffs clearly seek to modify the installment payment order in a substantive way that goes well beyond the mere correction of a mistake, defect, or irregularity, in an attempt

20

to include these charges.  Furthermore, since the charges are clearly excessive, the Court should

not only deny Plaintiffs' request to extend the installment payment order, but exercise its

inherent authority to grant Defendant's request to modify the Plaintiffs' attorney fees.  To allow

these excessive charges to stand, and to extend the installment payment order to cover these

charges, would run counter to every aspect of fairness and equity in addition to well-settled

judicial precedent.


## **<u>CONCLUSION</u>**

Based on the foregoing, it is respectfully requested that the Court deny the instant

application by Plaintiffs seeking an extension of their installment payment order and grant

Defendant's cross-motion to modify the award of attorney fees.

Dated: New York, New York
       September 14, 2016


/s/ Peter Moulinos
_____
MOULINOS & ASSOCIATES LLC
By: Peter Moulinos, Esq. (PM-5548)
Attorneys for Defendant
150 East 58th Street – 25th Floor
New York, New York 10022
Tel: (212) 832-5981

21